*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SUSAN LEWIS,

        *Plaintiff-Appellant,*

    *v.*

HUMBOLDT ACQUISITION CORPORATION,
INC., dba Humboldt Manor Nursing Home,
        *Defendant-Appellee.*

No. 09-6381

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 07-01054—J. Daniel Breen, District Judge.

Argued: November 30, 2011

Decided and Filed: May 25, 2012

Before: BATCHELDER, Chief Judge; MARTIN, BOGGS, MOORE, COLE, CLAY,
GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, KETHLEDGE,
WHITE, STRANCH and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Eric Schnapper, UNIVERSITY OF WASHINGTON, Seattle, Washington,
for Appellant. James K. Simms, IV, CORNELIUS & COLLINS, LLP, Nashville,
Tennessee, for Appellee. Jennifer S. Goldstein, UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amici
Curiae. **ON BRIEF:** Eric Schnapper, UNIVERSITY OF WASHINGTON, Seattle,
Washington, Michael L. Weinman, WEINMAN & ASSOCIATES, Jackson, Tennessee,
for Appellant. James K. Simms, IV, J. Cole Dowsley, Jr., CORNELIUS & COLLINS,
LLP, Nashville, Tennessee, for Appellee. Jennifer S. Goldstein, UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., Rae T.
Vann, NORRIS, TYSSE, LAMPLEY & LAKIS, LLP, Washington, D.C., E. Todd
Presnell, Kara E. Shea, MILLER & MARTIN PLLC, Nashville, Tennessee, Nicole E.
Shannon, Chris E. Davis, MICHIGAN PROTECTION & ADVOCACY SERVICE,
INC., Lansing, Michigan, for Amici Curiae.

SUTTON, J., delivered the opinion of the court, in which BATCHELDER, C. J., BOGGS, GIBBONS, ROGERS, COOK, McKEAGUE, GRIFFIN, and KETHLEDGE, JJ., joined. CLAY, J. (pp. 16–21), delivered a separate opinion concurring in part and dissenting in part, in which MARTIN, J., joined. STRANCH, J. (pp. 22–31), delivered a separate opinion concurring in part and dissenting in part, in which MOORE, COLE, and WHITE, JJ., joined. DONALD, J. (pp. 32–47), delivered a separate opinion concurring in part and dissenting in part.

––––––––––––––––

**OPINION**

––––––––––––––––

SUTTON, Circuit Judge. When Susan Lewis filed this lawsuit in 2007, Title I of the Americans with Disabilities Act (ADA) prohibited discrimination "because of" the disability of an employee. 42 U.S.C. § 12112(a), Pub. L. No. 101-336, Title I, § 102, 104 Stat. 327, 331 (1990) (amended 1991). When it came time to present her ADA claim to a jury, each party urged the district court to put a different gloss on this language. The company asked the court to instruct the jury that Lewis could prevail only if the company's decision to fire her was "sole[ly]" because of Lewis's disability, a term that appears in the Rehabilitation Act but not in the ADA. Lewis asked the court to instruct the jury that she could prevail if her disability was "a motivating factor" in the company's employment action, a phrase that appears in Title VII but not in the ADA. Consistent with the Supreme Court's decision in *Gross v. FBL Financial Services*, 557 U.S. 167 (2009), we see no reason to insert the one addendum ("solely") or the other ("a motivating factor") into the ADA. As the district court's jury instructions did not comply with all of these requirements, we reverse and grant Lewis a new trial.

I.

In March 2006, Humboldt Acquisition Corporation dismissed Lewis from her position as a registered nurse at one of the company's retirement homes. Lewis sued Humboldt under the ADA in March 2007, claiming that Humboldt fired her because she had a medical condition that made it difficult for her to walk and that occasionally required her to use a wheelchair. Humboldt responded that it dismissed Lewis based on

an outburst at work, in which she allegedly yelled, used profanity and criticized her supervisors.

The case went to a jury. At the close of the trial, Lewis asked the court to instruct the jury that if "the complained of discrimination was *a motivating factor* in the adverse employment decision," she should prevail. R.57 at 5 (emphasis added). The district court refused the request. It instead adopted the company's proposed instruction—that Lewis could prevail only if "the fact that [the] plaintiff was a qualified individual with a disability was the *sole* reason for the defendant's decision to terminate [the] plaintiff." R.100 at 14 (emphasis added). The jury ruled for the company.

## II.

In adopting the company's proposed instruction, the district court did not walk alone. For the past seventeen years, our court has required district courts to instruct juries that ADA claimants may win only if they show that their disability was the "sole" reason for any adverse employment action against them. The term crept into our ADA jurisprudence in *Maddox v. University of Tennessee*, 62 F.3d 843 (6th Cir. 1995), which involved claims under the ADA *and* the Rehabilitation Act of 1973, a happenstance that may explain why we blurred the distinction between the laws in the first place. Then, as now, the Rehabilitation Act and the ADA serve the same goals, seeking to eliminate disability-based discrimination and other barriers to employment and public services for individuals with disabilities. With the passage of the ADA in 1990, Congress extended many of the Rehabilitation Act's protections to entities that do not receive federal funding, and borrowed many of the requirements and standards from the earlier law in doing so. Relying on these similarities between the two laws (but neglecting to mention the differences between their causation standards), *Maddox* applied the Rehabilitation Act's causation standard to both claims because "[t]he ADA parallels the protection of the Rehabilitation Act." *Id*. at 846 n.2.

Consistent with *Maddox*, we used the "solely" standard in an ADA-only claim a year later, *Monette v. Electronic Systems Corporation*, 90 F.3d 1173, 1177–78 (6th Cir. 1996), and before long that became the standard for relief under the ADA in this

circuit, *see, e.g.*, *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 363–64 (6th Cir. 2007); *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002).

The longer we have stood by this standard, the more out of touch it has become with the standards used by our sister circuits. At this point, no other circuit imports the "solely" test into the ADA. *See Katz v. City Metal Co.*, 87 F.3d 26, 33 (1st Cir. 1996); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003); *Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999) (Title II case); *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 963 (7th Cir. 2010); *Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301 (8th Cir. 1995); *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1074 (11th Cir. 1996); *Adeyemi v. Dist. of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008).

Our interpretation of the ADA not only is out of sync with the other circuits, but it also is wrong. Since *Maddox*, Congress has amended the Rehabilitation Act and the ADA several times, but the distinction between the causation standards used by the two laws persists. When Lewis filed this lawsuit in 2007, § 504 of the Rehabilitation Act provided: "No otherwise qualified individual with a disability . . . shall, *solely* by reason of his or her disability, be . . . subjected to discrimination." 29 U.S.C. § 794(a) (emphasis added). At the time, Title I of the ADA provided: "No covered entity shall discriminate against a qualified individual with a disability *because of* the disability of such individual." 42 U.S.C. § 12112(a) (emphasis added).

Nor is Title I of the ADA, which applies to private and public employers, the only section of the ADA that fails to use "solely." Title II of the ADA, applicable to public services, says:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, *by reason of* such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

*Id.* § 12132 (emphasis added). The same is true of Title III (public accommodations), which applies to discrimination "on the basis of disability," *id.* § 12182(a), and Title V (anti-retaliation), which bars discrimination "because" an individual opposed an employment practice, *id.* § 12203(a).

Later amendments to the ADA do not change things. Under the ADA Amendments Act of 2008, Title I now reads: "No covered entity shall discriminate against a qualified individual *on the basis of disability* in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). Even though the amended law does not cover this lawsuit, it too says nothing about a sole-cause standard of liability. At no point, then or now, has the ADA used the "solely" because of formulation found in the Rehabilitation Act.

That leaves us with two laws with two distinct causation standards. One bars differential treatment "solely by reason of" an individual's disability; the other bars differential treatment "because of" the individual's disability. No matter the common history and shared goals of the two laws, they do not share the same text. Different words usually convey different meanings, and that is just the case here. A law establishing liability against employers who discriminate "because of" an employee's disability does not require the employee to show that the disability was the "sole" cause of the adverse employment action.

Nor should it surprise anyone that Congress opted to give the ADA more regulatory bite. After seventeen years of experience with the Rehabilitation Act's "solely" standard, Congress could well have decided that this limitation on employer liability should not be extended, particularly in a statute designed "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Whatever the reason for the difference between the standards, we cannot ignore the difference. Courts must refrain from "apply[ing] rules applicable under one statute to a different statute without careful and

critical examination," *Gross*, 557 U.S. at 174, an examination that in this instance reveals distinct causation tests. Making that distinction all the more glaring is the reality that Congress has amended the two statutes many times over the years but has never seen fit to join the causation standards. *See id.*

In contending that we should continue to add "solely" to the ADA causation standard, Humboldt relies on another provision of the ADA. "Except as otherwise provided in this chapter," it says, "nothing in this chapter shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 . . . ." 42 U.S.C. § 12201(a). Yet this provision does not merge the two causation standards. The first clause of the provision offers one reason. It contains a comparison caveat, warning the reader: "Except as otherwise provided in this chapter," except in other words as provided in the text of the ADA—exactly the company's problem here. The second clause provides another reason. It warns courts not to *dilute* the ADA standard of care relative to the Rehabilitation Act (not to construe it as "a lesser standard"). But respect for the ADA language—reading it as "because of," not as "solely because of"—*raises* the employer's standard of care in ADA cases. That is why it is the employee, not the employer, who asks us to respect the ADA language as it is. *See Bragdon v. Abbott*, 524 U.S. 624, 631–32 (1998) (construing the no "lesser standard" language of the ADA to mean that no less *protection* be afforded by the ADA than by the Rehabilitation Act).

Humboldt insists that another provision of the ADA brings the two causation standards together. That subsection instructs "agencies with enforcement authority" under the ADA to "develop procedures to ensure that administrative complaints filed under [the ADA] and under the Rehabilitation Act of 1973 are dealt with in a manner that avoids duplication of effort and prevents imposition of inconsistent or conflicting standards for the same requirements under [the ADA] and the Rehabilitation Act of 1973." 42 U.S.C. § 12117(b). Here, too, a relevant caveat appears, as the provision speaks only of similar treatment "for the same requirements" under the two statutes, a prerequisite that remains unfulfilled. The provision at any rate addresses only the

*enforcement* of the laws by executive *agencies* and the enforcement *procedures* those agencies should develop.  It does not speak to the standards dictated by the statutes themselves.  Enforcement provisions generally do not alter substantive standards of care.

An appeal to legislative history does not alter this conclusion.  A House Report on the ADA says that "[a]dministrative complaints filed under [the ADA] and the Rehabilitation Act should be dealt with in a manner to avoid duplication of efforts, and to prevent inconsistent or conflicting standards."  H.R. Rep. No. 101-485, pt. 3, at 472 (1990), reprinted in 1990 U.S.C.C.A.N. 445.  Even if one measure of legislative purpose indicates a congressional desire to eliminate any "inconsistent . . . standards" between the two statutes, that cannot trump a superior measure of legislative purpose—the text Congress enacted and the President signed into law, which refers to "inconsistent . . . standards" with respect to "the same requirements."

The sole-cause standard in the end is a creature of the Rehabilitation Act, and that is where we should leave it.  The standard does not apply to claims under the ADA.

### III.

In addition to urging the district court not to use the sole-cause standard, Lewis asked the court to instruct the jury that the ADA imposes liability if the claimant's disability "was *a motivating factor* in the adverse employment decision."  R.57 at 5 (emphasis added).  The words "a motivating factor" appear nowhere in the ADA but appear in another statute: Title VII.  For the same reasons we have no license to import "solely" from the Rehabilitation Act into the ADA, we have no license to import "a motivating factor" from Title VII into the ADA.

Congress enacted Title VII as part of the Civil Rights Act of 1964.  Pub. L. No. 88-352, § 701 *et seq.*, 78 Stat. 241.  As enacted, Title VII made it unlawful "for an employer . . . to discriminate against any individual . . . *because of* such individual's race, color, religion, sex, or national origin."  *Id*. § 703 (emphasis added).  In 1989, the Court considered how a because-of standard of causation worked in mixed-motives cases—cases where permissible and impermissible considerations played a role in the

employer's adverse employment action. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 232 (1989). The decision splintered four ways. As later characterized by the Court, the lowest common denominator of *Price Waterhouse* was the creation of a burden-shifting framework to determine causation in mixed-motive cases: "[I]f a Title VII plaintiff shows that discrimination was a 'motivating' or a 'substantial' factor in the employer's action, the burden of persuasion should shift to the employer to show that it would have taken the same action regardless of that impermissible consideration." *Gross*, 557 U.S. at 171.

Two years after *Price Waterhouse*, Congress passed the Civil Rights Act of 1991, which added two relevant provisions to Title VII. The first says: "Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, even though other factors also motivated the practice." Pub. L. No. 102–166, § 107, 105 Stat. 1071, 1075 (1991) (codified at 42 U.S.C. § 2000e-2(m)) (emphasis added). The second provides limited remedies—declaratory relief, injunctive relief and attorney's fees, but not damages or reinstatement—if the claimant meets the motivating factor standard but the employer shows it would have taken the same adverse employment action anyway. *Id*. (codified at 42 U.S.C. § 2000e-5(g)(2)(B)). The two provisions "responded to *Price Waterhouse*" by adding new standards for mixed-motives cases to the text of Title VII. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003).

There are two ways to look at this history. One is that *Price Waterhouse* established the meaning of "because of" for Title VII *and* other statutes with comparable causation standards, with Congress essentially ratifying *Price Waterhouse*: Namely, a "because of" causation standard permits a plaintiff to show that the prohibited characteristic was "a motivating factor" of the adverse employment action, shifting the burden of persuasion to the employer to show that the characteristic was not a "but-for" cause of the action because it would have taken the same action anyway for legitimate reasons. The other is that by amending Title VII to provide recovery under a

"motivating factor" theory, Congress made this theory available to Title VII claimants but not to claimants under other civil rights statutes given that Congress did not extend this framework to the other statutes.

Enter *Gross v. FBL Financial Services*, 557 U.S. 167 (2009). It adopted the second theory and refused to expand the reach of Title VII's "motivating factor" amendments to another civil rights statute that contained a "because of" standard of causation. At stake in *Gross* was whether to apply Title VII's "motivating factor" standard for proving employment discrimination, 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B), to disputes under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). Although both statutes concern employment discrimination and both statutes share common goals, the Court reasoned that it would not casually "apply rules applicable under one statute to a different statute." *Gross*, 557 U.S. at 174. Unlike Title VII, *Gross* observed, the ADEA does not allow a plaintiff to prove discrimination merely by showing that her disability was *a motivating factor* behind her adverse employment action; the ADEA requires discrimination to be *because of* a disability, which means "but-for" causation. *Id*. at 177–78. Making this difference in language particularly salient was the reality that Congress amended both statutes in 1991, but added the "motivating factor" language only to Title VII, not to the ADEA. Civil Rights Act of 1991, Pub. L. No. 102-166, § 107, 105 Stat. 1071; *see also id.* § 115; *Gross*, 557 U.S. at 174–75.

This rationale applies with equal force to the ADA. The ADEA prohibits discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), and does "not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor" in the adverse employment decision. *Gross*, 557 U.S. at 174. So too with the ADA, which makes unlawful "discriminat[ion] . . . *because of*" a person's disability, 42 U.S.C. § 12112(a), (b)(1), and which says nothing about allowing a plaintiff to prevail because a disability was a "motivating factor" in the adverse employment decision.

*Gross* likewise reasoned that Congress "neglected to add [the motivating factor] provision to the ADEA when it amended Title VII . . . even though it contemporaneously amended the ADEA in several ways." 557 U.S. at 174. The same is true of the ADA. Congress amended Title VII and the ADA through the Civil Rights Act of 1991, but added the "motivating factor" language only to Title VII. §§ 107, 109. "When Congress amends one statutory provision but not another," *Gross* tells us, "it is presumed to have acted intentionally." 557 U.S. at 174.

*Gross* resolves this case. No matter the shared goals and methods of two laws, it explains that we should not apply the substantive causation standards of one anti-discrimination statute to other anti-discrimination statutes when Congress uses distinct language to describe the two standards. Just as we erred by reading the "solely" language from the Rehabilitation Act into the ADA based on the shared purposes and histories of the two laws, *supra* at 7, so we would err by reading the "motivating factor" language from Title VII into the ADA. Shared statutory purposes do not invariably lead to shared statutory texts, and in the end it is the text that matters. The one circuit to address the ADA/Title VII question after *Gross* has taken the same path. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961–62 (7th Cir. 2010).

Lewis insists she is not asking us to read anything into the text of the ADA that is not already there. A section of the ADA, she points out, cross-references Title VII:

> The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of [Title VII] shall be the powers, remedies, and procedures this subchapter provides to the [EEOC], to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C. § 12117(a). But this cross-reference, which predates the 1991 amendments, accounts for the reality that the ADA does not have any enforcement provisions of its own. *Id.* That is why the provision has the label "Enforcement," *id.*, and why the Title VII cross-reference invoked by Lewis, 42 U.S.C. § 2000e-5, has the label "Enforcement provisions." That also is why these enforcement mechanisms apply only to remedies for

"discrimination on the basis of disability in violation of any provision of *this chapter*" (emphasis added), as opposed to violations of some other standard of care under *another* chapter. A disability claimant may not use the "powers, remedies, and procedures" of Title VII without establishing a violation of the ADA.

Confirming the point, the companion enforcement provision of this section of the ADA, labeled "Coordination," directs the agencies with enforcement authority under the ADA and the Rehabilitation Act to create "procedures" that "prevent[] imposition of inconsistent or conflicting standards for the same requirements." 42 U.S.C. § 12117(b). Congress took the same path with the coordination provision of Title II of the ADA, which incorporates "[t]he remedies, procedures, and rights" of section 505 of the Rehabilitation Act. 42 U.S.C. § 12133. Just as the provisions of the ADA incorporating the Rehabilitation Act's enforcement provisions do not bring that Act's standard of care into the ADA, neither does the provision of the ADA incorporating Title VII's enforcement provisions.

There is another reason the incorporation of Title VII's enforcement "powers, remedies, and procedures" into the ADA does not pull the "motivating factor" standard along with them. The part of Title VII that contains the "motivating factor" test—§ 2000e-2—is *not* included in the list of enforcement provisions identified in the ADA but appears (unsurprisingly) in a section of Title VII captioned "Unlawful employment practices." That Congress did not incorporate § 2000e-2 into the ADA ought to give a court pause before doing so itself.

Keep looking, Lewis tells us. Although the ADA's cross-references do not mention § 2000e-2, they do mention § 2000e-5, which itself contains a cross-reference to the "motivating factor" provision when it provides a limited set of remedies for Title VII claimants who demonstrate motivating-factor discrimination. But this cross-cross-reference argument contains problems of its own. One is that § 2000e-5 does not direct judges to apply the substantive "motivating factor" standard from § 2000e-2(m); it permits them only to provide a remedy for plaintiffs who "prove[ ] a violation under section 2000e-2(m)." 42 U.S.C. § 2000e-5(g)(2)(B). No ADA plaintiffs will prevail

under § 2000e-2(m), because that provision is a substantive standard that applies only to Title VII plaintiffs, not to ADA plaintiffs, as it speaks to "[i]mpermissible consideration of race, color, religion, sex, or national origin" but says nothing about disability status.  Nor does this reading make the ADA's incorporation of § 2000e-5 meaningless.  That subsection contains more than a dozen other provisions detailing procedures that remain applicable under the ADA.  In incorporating a wide range of Title VII enforcement procedures and remedies into the ADA, it is hardly surprising that some of those provisions (in truth some *parts* of those provisions) apply by their terms only to Title VII cases.

Still another problem with this argument is that § 2000e-5(g)(2)(B) cross-references *all* of § 2000e-2(m).  It applies the "motivating factor" standard of causation to "race, color, religion, sex, or national origin" discrimination in employment.  That means an ADA claimant could win only by showing discrimination based on *another* protected ground.  Even with a lower standard of causation, that is no benefit to claimants seeking relief premised on disability-based discrimination.  Surely the ADA does not impose liability based on other forms of discrimination or, worse, make other forms of discrimination a precondition for establishing disability-based discrimination.

Legislative history does not alter this conclusion.  Just as appeals to legislative history did not affect *Gross*'s decision to respect the differences between the text of the ADEA and the text of Title VII, *see* 557 U.S. at 186 n.6 (Stevens, J., dissenting), so they do not affect our decision.  The 1990 Report from the House Committee on the Judiciary adds nothing to Lewis's argument.  In addressing the ADA's incorporation of the "powers, remedies, and procedures" from five sections of Title VII, it said that "[a] bill is currently pending" that "would amend the powers, remedies and procedures of title VII . . . .  Because of the cross-reference to title VII in [the ADA], any amendments to title VII that may be made in [that bill] . . . would be fully applicable to the ADA." H.R. Rep. No. 101-485(III), at 24, *reprinted in* 1990 U.S.C.C.A.N. 445, 471.  That bill became the Civil Rights Act of 1991.  But any argument premised on this report merely

reprises the cross-reference textual argument addressed above and suffers from the same problems identified above.

More helpful to Lewis is this line from the House Committee on the Judiciary Report on the 1991 Civil Rights Act: "[M]ixed motive cases involving disability under the ADA should be interpreted consistent with the prohibition against all intentional discrimination in Section 5 of this Act." H.R. Rep. No. 102-40, pt. 2, at 3, reprinted in 1991 U.S.C.C.A.N. 694, 697. Yet this sentence does not import the motivating-factor standard into the ADA for several reasons. One, this section of the report relates to Title VII, not the ADA. Courts are justifiably skeptical of legislative history that purports to amend an earlier-enacted statute and that relates to an amendment to a different law. *See O'Gilvie v. United States*, 519 U.S. 79, 89 (1996). Two, the legislation proposed by this report was *not* the legislation adopted by Congress. *See* John L. Flynn, Note, *Mixed-Motive Causation Under the ADA: Linked Statutes, Fuzzy Thinking, and Clear Statements*, 83 Geo. L.J. 2009, 2048–49 (1995) (proposed bill would have allowed plaintiffs to receive punitive and compensatory damages if they met motivating-factor standard); *compare* Civil Rights Act of 1991, Pub. L. No. 102-166, § 107, 105 Stat. 1071, 1075–76, *with* H.R. Rep. 102-40, pt. 2, at 715. Three, the same report says (just a few sentences earlier) that the Title VII standards should apply to the ADA *and* the ADEA. It says: "A number of other laws banning discrimination, including the [ADA] and the [ADEA] are modeled after, and have been interpreted in a manner consistent with, Title VII. The Committee intends that these other laws modeled after Title VII be interpreted consistently in a manner consistent with Title VII as amended by this Act." H.R. Rep. 102-40, at 3. If this consistency objective did not alter the outcome in *Gross* with respect to the ADEA, it is difficult to see why it should make a difference here. The best indication of legislative purpose, *Gross* reminds us, is the meaning of the legislative text Congress enacts, not the meaning of a House Report describing that purpose—and especially not a House Report describing the purpose of language Congress never adopted.

That leaves one question:  what standard should trial courts use in instructing juries in ADA cases?  *Gross* points the way.  The ADEA and the ADA bar discrimination "because of" an employee's age or disability, meaning that they prohibit discrimination that is a "'but-for' cause of the employer's adverse decision."  557 U.S. at 176.  The same standard applies to both laws.  *See Serwatka*, 591 F.3d at 961–62.

A brief rejoinder to our colleagues' partial dissents is in order.  *First*, every salient argument in favor of importing the "motivating factor" burden-shifting test from Title VII into the "because of" test of the ADA was made in *Gross*.  For the same reasons the Supreme Court opted *not* to construe the "because of" language in the ADEA to incorporate this distinct statutory test from Title VII, we must do the same here.  No court of appeals has reached a contrary conclusion on this point after *Gross*.  *Second*, the same tools of statutory construction that require us to resist importing the "solely" language from the Rehabilitation Act into the ADA require us to resist importing the "motivating factor" burden-shifting framework of Title VII into the ADA.  The two inquiries are exceedingly similar.  *Third*, none of the dissents' lower-court citations holds up.  One of them, *Hunter v. Valley View Local Schools*, 579 F.3d 688 (6th Cir. 2009), concerned the application of a "motivating factor" test to the Family Medical Leave Act, 29 U.S.C. § 2615(a)(2).  There, however, a relevant administrative regulation, previously upheld by our court, required that outcome.  *Hunter*, 579 F.3d at 692.  The same is not remotely true here.  Another one, *Smith v. Xerox Corp.*, 602 F.3d 320, 329–30 (5th Cir. 2010), concerned the use of a "motivating factor" test in a different provision of *Title VII*.  There, no importation of a test from one statute into another was at issue, which is one reason the Fifth Circuit distinguished the Seventh Circuit's decision in *Serwatka,* as opposed to disagreeing with it, as the dissent must do here, *compare id*. at 329 n.28 *with infra* at 25 n.5.  A final case, *Pinkerton v. Spellings*, 529 F.3d 513 (5th Cir. 2008), concerned the issue at hand.  There, however, the Fifth Circuit reviewed the issue *before Gross,* which is to say it reviewed the issue without the guidance provided by the Supreme Court and without considering the relevant issues joined here.

IV.

For these reasons, we reverse the judgment against Lewis and remand for a new trial.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

CLAY, Circuit Judge, concurring in part and dissenting in part. The majority opinion fails to accomplish the original goal of this Court in choosing to hear this case *en banc*—which was to bring this Circuit into accord with the prevailing legal opinion on the issue addressed by the *en banc* Court. The majority continues to leave the Sixth Circuit opposed to the multiplicity of other circuits on the issue of the standard of causation required to prove discrimination under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213. It also fails to critically examine the relationship between Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the ADA in interpreting the ADA's language. For these reasons, I respectfully dissent.

An unanimous Sixth Circuit agrees that the "sole-cause" standard is inappropriate for determining causation under the ADA, but we are inexplicably divided by the task of determining which standard of causation to place in its stead. We look to the plain language of the ADA to discern whether it guides our decision. The ADA prohibits discrimination "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a).[1] Its causation language uses the phrase "because of," which is not determinative as to whether a "but-for," "motivating-factor," or other standard applies. Instead of viewing the statute singly, we must consider the broader purposes of the statute and its relationship to other civil rights statutes to determine the congressional intent as to the meaning of this phrase.

It is unnecessary to resort to a lengthy explanation of the legislative history of the ADA and other civil rights statutes or an extended statutory construction analysis, because the authority setting forth the application of Title VII to the ADA is clear and forthright. Simply put, the ADA was enacted to expand the protection against discrimination beyond that afforded by Title VII, in order to provide the same remedies

---

[1] Citations to the ADA correspond to the pre-2008 statute.

offered to individuals discriminated against on the basis of race, color, religion, sex, and national origin to those discriminated against on the basis of their disabilities. *See* 42 U.S.C. § 12101. The ADA explicitly cross-references and adopts Title VII's enforcement section, including "powers, remedies, and procedures." 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures [of] this subchapter . . . ."). Title VII's remedies thus apply to the ADA with equal force and validity; this includes the changing interpretation of Title VII and any amendments made thereto. As noted by the House of Representatives Report on the ADA, "[b]ecause of the cross-reference to title VII" in the ADA, "any amendment to Title VII that may be made" with respect to Title VII's powers, remedies, and procedures "would be fully applicable to the ADA." H.R. Rep. No. 101-485, pt. 3, at 48 (1990). In other words, "[b]y retaining the cross-reference to Title VII, the Committee's intent is that the remedies of Title VII, currently and as amended in the future, will be applicable to persons with disabilities." *Id.* "Thus, if the powers, remedies, and procedures change in title VII of the 1964 Act, they will change identically under the ADA for persons with disabilities." *Id.* The fact that Title VII employs the motivating-factor standard of causation informs us that the meaning of the ADA's "because of" language should correspondingly be interpreted to invoke the motivating-factor standard. 42 U.S.C. § 2000e-2(m).

The shortcomings of the "but-for" standard employed by the majority become clear when one considers, in this context, how the "but-for" concept is narrowly circumscribed by its own definition. "But-for cause," also referred to as "actual cause" or "cause in fact," means "[t]he cause without which the event could not have occurred." Black's Law Dictionary 212 (7th ed. 1999). It is "[t]he doctrine that causation exists only when the result would not have occurred without the [relevant] conduct." *Id.* at 192–93. In other words, but-for cause means that the relevant factor was *necessary* for the consummation of an event. As the Supreme Court has described it, "[b]ut-for causation is a hypothetical construct." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989). "In determining whether a particular factor was a but-for cause of a given event,

we begin by assuming that that factor was present at the time of the event, and then ask whether, even if that factor had been absent, the event nevertheless would have transpired in the same way." *Id.*

A motivating-factor standard, which is in accord with the requirements of the ADA, requires a plaintiff to show that her protected trait, disability in this case, was one of the considerations that the defendant took into account when taking action against the plaintiff. *See id.* at 250. A but-for standard requires proof that even if that consideration was absent, the adverse action "nevertheless would have transpired in the same way." *Id.* at 240 (but distinguishing the but-for standard from a sole-cause standard). While the but-for standard may lessen the burden on plaintiffs seeking to prove disability-based discrimination when compared with the sole-cause standard, it barely does so. Thus, a but-for standard suggests the availability of a much more limited basis for recovery by a plaintiff than would be indicated by the motivating-factor standard, which is more compatible with the remedial goals and objectives of Title VII. *See id.* at 240–42.

For example, imagine that a disabled plaintiff seeks remedy under the ADA following the termination of her employment, which she believes was on the basis of her disability. The plaintiff admits evidence that the employer wished to terminate her because the employer believed her disability was troublesome to its business; but the employer admits other evidence that the plaintiff's work was less than exemplary. Under a motivating-factor standard, the plaintiff could easily satisfy her causation burden by presenting evidence that her disability provided one of the reasons for her termination. However, under the but-for standard, the plaintiff is obligated to prove that without the disability, her allegedly poor performance would not have been enough to motivate her employer to terminate her. In practice, a plaintiff will rarely discover objective evidence of her employer's state of mind or internal motivations that would satisfy this extremely heavy burden. The plaintiff must instead resort to conjectural inquiry of the employer's thoughts and purposes, which the employer can simply and succinctly reject by offering a myriad of other subjective reasons for her termination. As the Supreme Court stated in *Price Waterhouse*, it is contrary to "our common sense" that "Congress meant to

obligate a plaintiff to identify the precise causal role played by legitimate and illegitimate motivations in the employment decision she challenges." *Id.* at 241; *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 191 (2009) (Breyer, J., dissenting) ("[T]o apply 'but-for' causation is to engage in a hypothetical inquiry about what would have happened if the employer's thoughts and other circumstances had been different. The answer to this hypothetical inquiry will often be far from obvious, and, since the employee likely knows less than does the employer about what the employer was thinking at the time, the employer will often be in a stronger position than the employee to provide the answer."). When taking into account the purpose of the ADA to ameliorate discrimination against people with disabilities and its relationship to other civil rights statutes, it becomes clear that the less burdensome motivating-factor standard of causation should apply.

The majority relies on the Supreme Court's recent decision in *Gross*, which held that claims under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634, are governed by the but-for standard and not the motivating-factor standard, as conclusive support for the proposition that the but-for standard must apply to ADA claims as well. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961–62 (7th Cir. 2010) (applying the but-for standard to the ADA after *Gross*). *But see Bolmer v. Oliveira*, 594 F.3d 134, 148–49 (2d Cir. 2010) (declining to decide whether *Gross* also applies in the ADA context); *Crouch v. J.C. Penney Corp., Inc.*, 337 F. App'x 399, 402 n.1 (5th Cir. 2009) (per curiam) (same). However, *Gross* is inapplicable to our analysis of the appropriate standard of causation under the ADA because *Gross* examined the issue in the context of the ADEA, which involves discrimination under a different analytical rubric. *See Hunter v. Valley View Local Sch.*, 579 F.3d 688, 691 (6th Cir. 2009) (analyzing the applicability of *Gross* to claims under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601, and concluding that the FMLA remains governed by the motivating-factor standard of Title VII). As the *Gross* Court itself notes, "[w]hen conducting statutory interpretation, we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'" 557 U.S. at 174 (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389,

393 (2008)). Because the ADA is explicitly tied to Title VII's remedies provisions—unlike the ADEA—a careful examination of the two statutes makes clear that a plaintiff alleging discrimination under the ADA must only prove that the discrimination was a motivating factor for the adverse action.

Significantly, a majority of our sister circuits have embraced the motivating-factor standard in reviewing ADA claims. *See Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (per curiam) ("Under a plain reading of the statute, and in accord with the position of other circuits, . . . [t]he proper causation standard under the ADA is a 'motivating factor' test."); *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1064–65 (9th Cir. 2005) (deciding that the ADA's phrase "'because of' conveys the idea of a factor that made a difference in the outcome" (citation omitted)); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (invoking a pretext and mixed-motives theory, which requires proof that disability was a "substantial motivating factor" in the adverse action); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000) (holding that the motivating factor standard "is consistent with the broad purpose of the ADA"); *Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (holding that "motivating factor" and "but for" constitute the same standard); *Katz v. City Metal Co.*, 87 F.3d 26, 33 (1st Cir. 1996); *Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301 (8th Cir. 1995). The Sixth Circuit should join this consensus.

Moreover, as we were recently reminded with Congress' amendments to Title VII, it is important that courts not pare down the rights afforded to individuals by the legislature or act as lawmakers. Indeed, Congress glaringly proclaimed in amending Title VII with the Civil Rights Act of 1991 that its statutory amendments had two purposes: "The first is to respond to recent Supreme Court decisions by restoring the civil rights protections that were dramatically limited by those decisions. The second is to strengthen existing protections and remedies available under federal civil rights laws . . . ." H.R. Rep. No. 102-40, pt. 2, 1 (1991). Justice Stevens gave recognition to this fact in *Gross* by reiterating that, "[a]s part of its response to 'a number of recent

decisions by the United States Supreme Court that sharply cut back on the scope and effectiveness of [civil rights] laws,' . . . Congress eliminated the affirmative defense to liability that *Price Waterhouse* had furnished employers and provided instead that an employer's same-decision showing would limit only a plaintiff's remedies." 557 U.S. at 185 (Stevens, J., dissenting) (citing H.R. Rep. No. 102-40, pt. 2, 2).

Employing a but-for causation standard for ADA claims imposes a burden upon individuals in seeking to vindicate disability-based discrimination that is greater than the burden intended by Congress. Because neither Congress—nor the Supreme Court—has expressly diminished individuals' rights under the ADA, it is inappropriate for our Circuit to do so without such a mandate. *See, e.g.*, Borgmann, Caitlin E., *Rethinking Judicial Deference to Legislative Fact-Finding*, 84 Ind. L.J. 1, 38 (2009) ("[W]here Congress or a state legislature seeks to create or protect, rather than curtail, individual rights, there is less compelling justification for the courts to intercede."). Although we have made one stride forward in eliminating the more burdensome sole-cause standard, the majority has taken us a step back in continuing to place an additional indefensible onus on plaintiffs in proving their ADA claims that was not prescribed by Congress.

I decline to join the majority opinion due to its failure to bring our Circuit into consensus with the generally-agreed upon correct standard of adjudicating discrimination claims in the ADA context. The majority's failure to properly acknowledge Congress' intention that the ADA be interpreted in accordance with the motivating-factor standard employed in the Title VII context leaves us with the but-for standard, which is only marginally more efficacious than the sole cause standard that has now been entirely repudiated by this Circuit.

─────────────────────────────────────────────

**CONCURRING IN PART AND DISSENTING IN PART**
─────────────────────────────────────────────

JANE B. STRANCH, Circuit Judge, concurring in part and dissenting in part. I concur with the majority opinion's holding that the protection against discrimination provided by the Americans with Disabilities Act does not hinge upon establishing that disability was the "sole" cause of an adverse employment action. And I agree that the error this decision corrects resulted from our prior failure to respect the words of the ADA and the rules of statutory construction that must govern our analysis.

For the same reasons—failure to respect the words of the statute as a whole and failure to honor the tenets of statutory construction—I respectfully dissent from the majority's determination that we now impose a "but for" standard upon those seeking protection under the ADA from discrimination "because of" disability. Applying the rules we admittedly failed to apply before, I conclude that the plain language of the ADA permits a plaintiff to recover when the plaintiff's disability was a motivating factor in the adverse employment decision.[1]

In analyzing a statute, both language and context matter. To understand the ADA, particularly the "because of" language in section 102(a), the year in which the ADA was enacted is the key in two respects. First, during 1990, Congress was working on both the ADA and the Civil Rights Act, the latter including amendments to Title VII. This presented a practical problem for implementing Congressional intent to establish the same powers, remedies, and procedures in both the ADA and Title VII: the ADA was enacted in 1990 but not soon enough for its provisions to be specified in the bills that ultimately became the Civil Rights Act; and, the Civil Rights Act was not completed until 1991, too late to be specified in the ADA. Due to this timing issue, Congress chose to effectuate its goal by linking the two statutes, explicitly incorporating Title VII

─────────────────

[1]As the majority recognizes in its opening, this case is about the ADA language prior to the Congressional revisions in 2008. Thus, only the pre-2008 statute is before this Court. Since we are not called upon nor authorized to opine on the post-2008 ADA, any conclusions offered on the current ADA are dicta.

provisions into the ADA by reference.  This served two purposes, it linked the statutes and insured that they would proceed in tandem across time.

The second reason the ADA's year of enactment is key is tied to the instruction that, when analyzing statutory language, we must be mindful of the context in which it was crafted.  It is a settled canon of statutory construction that courts will presume Congress was well aware of the prevailing law when it enacted a statute.  *United States v. Kassouf*, 144 F.3d 952, 957 (6th Cir. 1998); *see also North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [our] precedents . . . and that it expect[s] its enactment[s] to be interpreted in conformity with them."); *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 818 (6th Cir. 2004) (Sutton, J., concurring in part and dissenting in part) ("[I]t is appropriate to consider other indicators of statutory meaning, analogous Supreme Court precedents and relevant state laws predating the legislation."). Thus, we are tasked with discerning what Congress intended the phrase "because of" an employee's disability to mean when it enacted the ADA.

In 1989, the Supreme Court decided *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989),  determining what the statutory language "because of" meant in Title VII.  The Court held that where a plaintiff proved gender played "a motivating part" in an employment decision, along with other legitimate factors, the plaintiff established that the decision was "because of" sex in violation of Title VII.  *Id.* at 250.  This method of proof became known as the "mixed-motive" analysis, *see id.* at 246-47, or the "motivating factor" standard.  Thus, when Congress enacted the ADA shortly thereafter and chose both to include the "because of" language and to cross-reference Title VII, it knew that using the Title VII language in an analogous and closely related employment anti-discrimination statute created a "motivating factor" standard.  *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 698-99 (1979) ("[E]valuation of congressional action must take into account its contemporary legal context."); *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 315 (6th Cir. 1998) ("To understand the intent and purpose behind

the legislation in question, it is important to consider the political and legislative context in which it was enacted.").

The majority ignores these traditional rules of construction and instead declares this ADA case controlled by the Supreme Court's decision in *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167 (2009), an Age Discrimination in Employment Act (ADEA) case that applied a "but for" causation standard and not a "motivating factor" standard. The majority errs. The statutory language and enactment context of the ADA makes inapposite an analysis of the ADEA. More about the significance of those differences later. For now, the crucial issue is that the majority ignores the rules of statutory construction that require evaluation of such differences and instead posits an all-or-nothing result. The majority presumes that there are only two ways to interpret *Price Waterhouse* and the subsequent legal history, including passage of the Civil Rights Act of 1991: either that (1) the language "because of" in a statute *always* means "a motivating factor" or (2) it means so only for Title VII and *never* for any other statute. (Majority Op. at 8-9). Having created this false dichotomy, the majority then presumes that in *Gross* the Supreme Court adopted the "second theory"—that Congress intended to provide a "motivating factor" standard only to Title VII claimants "but not to claimants under other civil rights statutes." (Majority Op. at 9). This blanket premise, which infects the majority's entire analysis, finds validation neither in the rules of statutory construction nor in the case precedent of either the Supreme Court or the Sixth Circuit.[2]

As to the Supreme Court, *Gross* simply cannot support the weight of the majority's conclusion. *Gross* itself teaches that statutory interpretation is an individualized inquiry. Its very language belies blanket applicability as it clearly

---

[2]The majority challenges the lower court citations herein, claiming none "holds up." (Majority Op. at 14). But they do because they establish that neither the other circuits cited nor we ourselves have bought into the premise underlying the majority opinion, that Congress intended a "motivating factor" standard to apply only to Title VII but not to "other civil rights statutes." (Majority Op. at 9). That the ultimate outcome in those cases may relate to factors not present in our case is of no moment. The issue is that in the cases cited the courts fully review the statutory language at issue to determine what each statute or section of a statute means, the very analysis this dissent argues is required. The cited decisions, including our own, hold up because they do not accept the blanket and constricting premise the majority opinion now posits.

undertakes an analysis only of the ADEA: "Our inquiry therefore must focus on the text of the ADEA[.]" 557 U.S. at 175. Further, it reminds us that we "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination"—a rule the majority transgresses here. *Id.* at 174.

In *Hunter v. Valley View Local Schools*, 579 F.3d 688, 691 (6th Cir. 2009), we took that instruction to heart and refused to presume that *Gross* employed a broad stroke wiping out the applicability of Title VII standards to other civil rights statutes. We examined the issue and concluded, "*Gross* thus requires us to revisit the propriety of applying Title VII precedent to the FMLA by deciding whether the FMLA, like Title VII, authorizes claims based on an adverse employment action motivated by both [prohibited factors] and also other, permissible factors." *Id.* (holding that *Price Waterhouse*'s "motivating factor" standard applies to FMLA claims). In *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010), the Fifth Circuit gave a similar explication of *Gross*—in response to the same claim of *Gross*'s controlling authority—when it sought to determine whether the "motivating factor" standard from Title VII's discrimination provision, 42 U.S.C. § 2000e-2, should apply to Title VII's retaliation provision, 42 U.S.C. § 2000e-3, which did not contain and was never amended to include "motivating factor" language. The Fifth Circuit noted that the textual differences between the ADEA and Title VII guided the Supreme Court's decision in *Gross*,[3] and that a "simplified application of *Gross*" in the Title VII retaliation context, as advocated by Xerox, "would be contrary to *Gross*'s admonition against intermingling interpretations of the two statutory schemes." *Id.* at 328-29 (holding that *Price Waterhouse*'s "motivating factor" standard applies to Title VII retaliation claims). The Fifth Circuit reached the conclusion applicable here, that "the *Price Waterhouse* holding remains our guiding light." *Id.* at 330.

---

[3]The Supreme Court bolstered its decision in *Gross* by noting that the ADEA and Title VII have been treated differently by courts in several respects, including in the applicability of Title VII's *McDonnell Douglas* burden-shifting framework, which the Supreme Court has not definitively decided to apply in the ADEA context. 557 U.S. at 175 n.2. That argument favors a different result here as the *McDonnell Douglas* framework *has* been applied to the ADA. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53-54 (2003).

The majority finds *Smith* inapposite because it "concerned the use of a 'motivating factor' test in a different provision of *Title VII*" and concludes the Fifth Circuit distinguished *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010) on this basis. (Majority Op. at 14). *Smith* cannot be dismissed so easily. As the Fifth Circuit itself recognized, the *Gross* reasoning could be applied to Title VII's retaliation provision, which had not been amended in 1991 to include a "motivating factor" standard when its discrimination counterpart was so amended. *See Smith*, 602 F.3d at 328. However, the *Smith* court rejected "such a simplified application of *Gross*," *id.* at 328, and declined to follow the "broad view of *Gross*" adopted by the Seventh Circuit, *id.* at 329 n.28. It was this fundamental disagreement regarding *Gross*'s appropriate scope that led to the Fifth Circuit's departure from the reasoning in *Serwatka*, not the title of the statute at issue. Finally, the Fifth Circuit also distinguished *Gross* as a case on the *ADEA*, a statute not before that court, as it is not before us. *Id.* at 329. Thus, this Court's analysis in *Hunter* and the Fifth Circuit's analysis in *Smith* wholly undercut the majority's broad conclusion that *Gross* adopted a theory which grants the "motivating factor" standard to Title VII discrimination claimants but automatically denies it "to claimants under other civil rights statutes." (Majority Op. at 9).

Because the tenets of statutory construction and case precedent eschew the majority's presumptions about *Gross*, we must complete the required task—a careful examination of the ADA itself. We turn to the key wording of the ADA, the prohibition on discrimination "because of" disability. 42 U.S.C. § 12112(a). We have already explained that in 1989 *Price Waterhouse* defined these Title VII words to entail a "motivating factor" standard that Congress subsequently codified into Title VII, through the Civil Rights Act of 1991. 42 U.S.C. § 2000(e)-2(m). The ADA was passed in 1990, between those events, containing explicit cross-references to Title VII's powers, remedies, and procedures.

Ignoring that context and declaring blanket applicability of *Gross*, the majority assumes that the Supreme Court's ADEA statutory analysis simply transfers to the ADA

and disposes of this case through the holding: "We cannot ignore Congress' decision to amend Title VII's relevant provisions but not make similar changes to the ADEA." 557 U.S. at 174. The majority's analysis thus hinges on the Title VII amendments in the Civil Rights Act of 1991. However, as the Supreme Court also noted, we must view each statute in its own context. And here context is very important. The ADEA was enacted in 1967, decades before the *Price Waterhouse* holding and without any explicit cross-references to the major substantive provisions of Title VII. The ADA, on the other hand, was conceived in 1990 by a Congress that was well aware of *Price Waterhouse* and born into a legal context in which "because of" meant that a "motivating factor" standard applied. And Congress assured that application by expressly including cross-references to Title VII in the initial ADA language.

When the ADA was enacted in 1990, to implement its intended parallel between the statutes, Congress explicitly linked the ADA to Title VII. Section 107(a) of the ADA provides:

> The powers, remedies, and procedures set forth in section 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to . . . any person alleging discrimination on the basis of disability in violation of any provision of this Act . . . .

42 U.S.C. § 12117(a). This express reference to Title VII emphasizes Congress's intention that the two statutes be interpreted the same way. Relying on the ADEA analysis, the majority makes much of Congress's decision not to place the words "motivating factor" directly into the ADA in the 1991 amendments. But, in 1990, Congress had already considered and resolved this proposition for the ADA when it chose, instead, to link the two statutes so that they would *always* have the same standard:

> An amendment was offered . . . that would have removed the cross-reference to Title VII and would have substituted the actual words of the cross-referenced sections. This amendment was an attempt to freeze the current Title VII remedies (i.e., equitable relief, including injunctions and back pay) in the ADA. This amendment was rejected as antithetical to the purpose of the ADA—to provide civil rights

> protections for persons with disabilities that are parallel to those available
> to minorities and women.  By retaining the cross-reference to Title VII,
> the Committee's intent is that the remedies of Title VII, currently and as
> amended in the future, will be applicable to persons with disabilities.

H. Rep. No. 101-485 (III) at 48 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 471 (House Report for the ADA).  The date of passage, the different legal context, and the intentionally different language of the ADA renders *Gross*'s analysis of the ADEA simply inapplicable to the ADA.[4]

Though the textual analysis above and the legal context of the ADA's passage should be dispositive, the Civil Rights Act amendments do have a role in this case, albeit not the one the majority presses.  First, the amendments reinforce the availability of mixed-motive claims under Title VII in the wake of the Supreme Court's *Price Waterhouse* decision.  *See* 42 U.S.C. §§ 2000e-5(g)(2)(B), 2000e-2(m) (both expressly referencing mixed-motive or motivating-factor claims).  More importantly, Congress used those amendments to codify the "motivating factor" standard into the ADA through the Title VII provisions that it had previously incorporated into the ADA.  *See* 42 U.S.C. § 12117(a) (incorporating enumerated Title VII sections).  Those incorporated sections include the "Enforcement Provisions" set out in section 706(g)(2)(B) of Title VII, which directly reference the "motivating factor" standard.  42 U.S.C. § 2000e-5(g)(2)(B).  Thus, the Civil Rights Act implemented the prior Congressional decision by inserting in Title VII, and thereby including in the ADA, the "motivating factor" language.

> Because the ADA as enacted by Congress made available in ADA
> actions for employment discrimination the very same remedies available
> in Title VII actions, passage of the remedial amendments to Title VII had
> the effect of amending the ADA as well.

---

[4]Congress's silence in amending the ADEA in the 1991 amendments may suggest the intentional line-drawing of Congress between the ADEA and Title VII, which were not linked.  However, given the legal context of the ADA and its intentional linking to Title VII, that same silence for the ADA means the opposite—it means Congress wanted to keep the existing system of treating ADA claims consistently with Title VII claims.

*Rights of Americans with Disabilities (Americans with Disabilities Act of 1990, as amended through 1991, 42 U.S.C. §§ 12101-12213)*, 5-22A Civil Rights Actions P 22A.01 (Matthew Bender & Co., Inc. 2011).

The majority ignores this express linkage, arguing that "incorporation of Title VII's enforcement 'powers, remedies, and procedures' into the ADA does not pull the 'motivating factor' standard along with them." (Majority Op. at 11). But there is no need to "pull" the "motivating factor" standard from Title VII into the ADA because Congress had already chosen to use the words expressing that standard and had already tied the ADA to Title VII in 1990. Simply put, the ADA is not the ADEA and the majority is not free to treat the words of the ADA as if they exist in a vacuum. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

Viewing the statute in context and in accordance with the tenets of statutory construction, the ADA includes a right of recovery under a "motivating factor" standard. For these reasons alone, I would join the majority of circuits that have interpreted the ADA to allow a plaintiff to establish a claim by showing that his or her disability was a motivating factor in an adverse employment decision.[5] *See*, *e.g.*, *Pinkerton v. Spellings*, 529 F.3d 513, 518-19 & n.30 (5th Cir. 2008) (collecting cases).

Those reasons are further supported by legislative history. The majority finds legislative history inapposite because appeals to it were unsuccessful in *Gross*. (Majority Op. at 12). Once again, the history of the ADEA is not the history of the ADA. And a further investigation of legislative history of the ADA makes it exceedingly difficult to

---

[5]The Seventh Circuit, following the Supreme Court's decision in *Gross*, has abrogated its prior precedent holding that mixed-motive claims are viable under the ADA. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010). In doing so it relied on the rationale that the ADA's liability provision, 42 U.S.C. § 12112, does not explicitly reference "mixed-motive" or "motivating factor" claims as Title VII does, *see* 42 U.S.C. § 2000e-2(m). I disagree with the failure in *Serwatka* to give the context of the ADA's enactment and its incorporation of Title VII's mixed-motive remedies provision their proper weight. *Cf. Smith*, 602 F.3d at 329 n.28 (distinguishing *Serwatka* and rejecting the Seventh Circuit's "broad view" of *Gross*). Therefore, I believe *Serwatka* is an incorrect interpretation of the ADA.

support a view that limits the available recovery for disability discrimination as compared to recovery for race, color, religion, sex, and national origin discrimination under Title VII:

> And they should be parallel. The remedies for victims of discrimination because of disability should be the same as the remedies for victims of race, color, religion, sex, and national origin discrimination. . . . The remedies should remain the same, for minorities, for women, and for persons with disabilities. No more. No less.

101 Cong. Rec. 2599, 2615 (daily ed. May 22, 1990) (statement of Rep. Edwards). As a House Report for the ADA explained, "if the powers, remedies and procedures changed in Title VII . . . , they will change identically under the ADA for persons with disabilities." H. Rep. No. 101-485 (III) at 48 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 471. "[T]he purpose of the ADA [is] to provide civil rights protections for persons with disabilities that are parallel to those available to minorities and women." *Id.*

The remedies should be the same; no more, no less. The majority's decision makes an ADA plaintiff's remedy decidedly less. Moreover, an incorporated remedy that is made unavailable by the courts constitutes a failure to give meaning and effect to the words Congress selected to include in the statute. This violates elementary tenets of statutory construction: "[T]he inquiry begins with the fundamental purpose of judicial construction of statutes, which is to ascertain and give effect to the original meaning of the words used by Congress[.]" *Appoloni v. United States*, 450 F.3d 185, 199 (6th Cir. 2006). We thus "begin with the understanding that Congress 'says in a statute what it means and means in a statute what is says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).

I believe the majority's determination that a "but for" standard applies to the ADA fails to honor the rules of statutory construction by which we are bound and thereby fails to respect the clear intention of Congress. The plain language of the ADA, the legal context of its passage, and the debate and commentary explicating Congressional purpose all evidence the decision by Congress that the ADA is to be

interpreted and enforced in a manner parallel with Title VII, including its "motivating factor" standard of liability.  Because I believe the courts are not free to disregard that Congressional instruction, I respectfully dissent.

―――――――――――――――――――――――――――――――

## CONCURRING IN PART AND DISSENTING IN PART
―――――――――――――――――――――――――――――――

BERNICE B. DONALD, Circuit Judge, concurring in part and dissenting in part. I concur with this Court's welcome abandonment of its past interpretation of the Americans with Disabilities Act, which read the word "solely" into the ADA's express "because of" causation standard. I dissent, however, from the majority's view that under the ADA the plaintiff alone must shoulder the burden of persuasion as to causation. I write separately, and at length, to describe an alternative approach to this controversy which, I believe, accurately reflects the relevant legislative history and case law.

Now that we have recognized our error in importing language from the Rehabilitation Act into the ADA without a proper basis, the notion of returning to the plain statutory language of the ADA has a natural allure. Likewise, the call to resist importing language from yet another statute, Title VII, appeals to our sense of symmetry and order. But, although the plain language of the statute is the proper starting point in any analysis, the meaning of even the simplest term cannot be fully ascertained without taking into account the context, including historical and grammatical, in which it is found.

In *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the Supreme Court formulated a distinctive analytical approach to Title VII "mixed-motive" cases, i.e., those in which the parties to an employment discrimination action claim both legitimate and illegitimate bases for the adverse employment decision. Setting aside the familiar *McDonnell Douglas/Burdine* framework in this context, a fractured Court established a two-step burden-shifting paradigm under which the plaintiff must first show by a preponderance of the evidence that discrimination was a substantial or motivating factor in the employment decision. *Id*. at 252. The burden of persuasion then shifts to the employer, who, to escape liability, must show by a preponderance of the evidence that "its legitimate reason, standing alone, would have induced it to make the same decision." *Id*.

Although six justices joined in the *Price Waterhouse* judgment, there was sharp division among them as to the proper characterization of Title VII's "because of" standard of causality. A plurality of the justices declared that to "construe the words 'because of' as colloquial shorthand for 'but-for causation,' . . . is to misunderstand them." *Id*. at 240. The plurality took the "words to mean that gender must be irrelevant to employment decisions." *Id*. Justice O'Connor, on the other hand, in her concurrence with the judgment, "disagree[d] with the plurality's dictum that the words 'because of' do not mean 'but-for' causation; *manifestly they do*." *Id*. at 262-63 (emphasis added). To Justice O'Connor, the burden-shifting mechanism prescribed by the Court was an appropriately balanced, equitable means of *determining* but-for causation, rather than a substitute for it. As she described the approach,

> the plaintiff must produce evidence sufficient to show that an illegitimate criterion was *a substantial factor* in the particular employment decision such that a reasonable factfinder could draw an inference that the decision was made "because of" the plaintiff's protected status. Only then would the burden of proof shift to the defendant to prove that the decision would have been justified by other, wholly legitimate considerations.

*Id*. at 278 (emphasis added).

According to O'Connor, this approach is warranted because at times a but-for test imposed upon the plaintiff alone "demands the impossible." *Id*. at 264 (quoting Malone, *Ruminations on Cause-In-Fact,* 9 Stan. L. Rev. 60, 67 (1956)). Because the "deterrent purpose of Title VII is disserved by a rule which places the burden of proof on plaintiffs on the issue of causation in all circumstances," *id*. at 278, O'Connor endorsed the shared-burden evidentiary framework as applicable to "all disparate treatment plaintiffs where an illegitimate consideration played a substantial role in an adverse employment decision." *Id*. at 279.

In its plurality opinion, two concurrences, and a dissenting opinion, *Price Waterhouse* put forth at least four views on the definition of Title VII's "because of" standard. The Court, however, failed to arrive at a consensus on the matter. In place of a definition, the Court provided a procedural mechanism that is triggered when a

challenged adverse employment decision was based on both illegitimate and legitimate reasons.

In the wake of *Price Waterhouse*, and partially in response to it, Congress amended Title VII, adopting much of the Court's terminology but replacing the decision's procedural scheme with one of Congress's own making. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 251 (1994). The 1991 amendments retained the "because of" language in defining what is forbidden:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin . . .

42 U.S.C. § 2000e-2(a)(1) (emphasis added). As to the evidentiary burden, the revised statute provided that "[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party *demonstrates* that race, color, religion, sex, or national origin was a *motivating factor* for any employment practice, even though other factors also motivated the practice." *Id.* at § 2000e-2(m) (emphasis added). Finally, a companion enforcement provision was added:

> On a claim in which an individual proves a violation . . . and a respondent demonstrates that the respondent would have taken the *same action* in the absence of the impermissible *motivating factor*, the court (i) may grant declaratory relief, injunctive relief . . . and attorney's fees and costs . . . and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment . . .

*Id.* at § 2000e-5(g)(2)(B) (emphasis added).

Taken together, these three provisions represent both an acceptance and a subtle retooling of the *Price Waterhouse* paradigm. Despite the Court's failure to agree on a definition of the statute's "because of" standard, Congress retained this language unaltered and undefined, in apparent recognition that it is not the definition of the term but the associated procedures that matter (and in apparent agreement with Justice White's observation that "[i]t is not necessary to get into semantic discussions on

whether the [Court's] approach is "but-for" causation in another guise"). *See Price Waterhouse*, 490 U.S. at 259. The phrase "motivating factor" was adopted, not as the first of a two-step liability determination but rather as the stand-alone causation standard in proving liability. The "same decision" test was also adopted from the opinion, but as an affirmative defense to damages rather than to liability.

The above-described alterations to Title VII appear at first glance to be substantial. The appearance of significance, however, fades considerably upon close examination. Under the new Title VII, a mixed motive plaintiff could prevail on a "motivating factor" showing alone, but could not be awarded damages if the defendant could convince the fact-finder that it would have made the same decision anyway. This is, for all practical purposes, the same substantive outcome as under *Price Waterhouse.* The only real difference is that attorney's fees could be awarded to the plaintiff even where but-for causation was disproved.

The majority reviews this history and declares that it leads to one of only two possible views: Either 1) *Price Waterhouse* established the meaning of "because of" in the panoply of anti-discrimination statutes with similar standards, and Congress ratified this holding in its amendments to Title VII; or 2) The Title VII amendments effectively nullified *Price Waterhouse* as it is applies to both Title VII and all other the civil rights statutes.

The first of these two views is plainly off the mark. *Price Waterhouse* does not define the "because of" standard but rather provides a procedural mechanism to be used where this undefined standard applies. More importantly, Congress did not simply codify the *Price Waterhouse* holding. Outright ratification would have meant incorporation of the two-step burden shifting described in that decision. Alternatively, Congress could have effected ratification by acquiescing in the Court's interpretation and taking no action at all. Instead, Congress departed from and expanded upon *Price Waterhouse* by 1) allowing liability under Title VII to be established by demonstrating that an impermissible criterion was a motivating factor behind an employment decision and 2) allowing certain remedies even when the employer has shown that it would have taken

the same action for legitimate reasons, so long as discrimination was a motivating factor. Although, practically speaking, these changes do not make a great deal of difference, they were important enough to Congress to warrant a complex modification of the statute to distinguish the new procedural arrangement from that set forth in *Price Waterhouse.*

But the second view is not accurate either. Certainly the amendments supersede the *Price Waterhouse* decision to the extent that the new Title VII's standards and remedies are different from those set forth in the decision. But the notion that these amendments were intended to nullify *Price Waterhouse*'s application to other anti-discrimination statutes is without any logical or historical foundation. As Judge Stranch points out, Congress enacted the ADA the year after *Price Waterhouse* and the year before the 1991 amendments. The ADA utilizes the same "because of" language that the Court had just confronted and interpreted and it contains a provision explicitly linking the statute to Title VII. And as Judge Stranch indicates, we must presume Congress was well aware of the prevailing law at the time with regard to the interpretation of the "because of" standard in civil rights cases, i.e., *Price Waterhouse*. The circumstances of the ADA's enactment thus effectively rebut the contention that Congress intended to nullify *Price Waterhouse* as it applied to the ADA.

Although *Price Waterhouse* dealt with Title VII, various courts, for various reasons, have found that its principles apply to cases brought under other anti-discrimination statutes, like the ADA, containing the same "because of" standard. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336-37 (2d Cir. 2000) (collecting cases). Of course, the Sixth Circuit is not among the courts that have found that mixed motive analysis is appropriate under the ADA because the Court has been bound by the aforementioned flaw in its reading of the statute, which the Court with the present opinion now corrects. *See Layman v. Alloway Stamping & Mach. Co.*, *Inc.,* 98 F. App'x 369, 376 (6th Cir. 2004) ("Despite the persuasive textual argument and the weight of authority from other circuits, this court has established a standard to which this panel is bound.").

I believe the relationships among *Price Waterhouse,* Title VII, and the other civil rights statutes to be considerably more nuanced than the majority indicates. I therefore offer below my own list of tenable views of the relevant history, based upon actual positions taken by the various circuit courts, along with an analysis of the merits of each.

1) *Price Waterhouse* **burden shifting applies to the ADA**: Under this view*, Price Waterhouse* was nullified in 1991 as to Title VII mixed motive discrimination claims but not as to similar claims brought under other civil rights statutes with causation standards parallel to that of Title VII prior to the 1991 amendments.

2) **"Motivating factor" is the causation standard under the ADA, based solely on an analysis of the "because of" standard's "plain meaning"**: In the view of some courts, the effective causation standard found in the various civil rights statutes is the same as the Title VII standard, not because of importation or linkage of concepts from one statute to another, but based solely on the shared "because of" language. The issue of burden shifting is often left unaddressed under this view.

3) **Neither *Price Waterhouse* nor Title VII standards apply to the ADA. Because the statute lacks explicit mixed-motive language, the ADA's "because of" standard means "but for" causation.** According to at least one court**,** and in the view of the majority**,** under the ADA the plaintiff must prove that disability was the but-for cause of the challenged adverse employment action; the burden of persuasion does not shift to the employer to show that it would have taken the action regardless of disability.

4) **"Motivating factor" is the causation standard for liability under the ADA and the "same decision" test applies to remedies, owing to the ADA's incorporation provision.** According to this view, the explicit link between the ADA and Title VII incorporates both the "motivating factor" and the "same decision" tests into the ADA, giving the statutes identical standards and remedies in perpetuity.

Each of these, more or less, distinct views is examined in detail in what follows.

**The Continuing Applicability of Price Waterhouse View**

Since shortly after the *Price Waterhouse* decision was rendered and Congress responded by amending Title VII, the lower courts have confronted whether the mixed-motive frameworks apply in the context of other civil rights statutes. From 1992 through 1996, a number of circuit courts determined (or assumed) that *Price Waterhouse* applied to Title VII *retaliation* claims, even though the statutory provisions governing such claims relied on an independent, unembellished "because of" standard and lacked any mixed-motive, burden-shifting language. *See, e.g., Tanca v. Nordberg*, 98 F.3d 680, 681 (1st Cir. 1996) (holding that while Title VII's mixed motive provisions do not apply to Title VII retaliation claims, the *Price Waterhouse* burden-shifting rule does); *see also Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir.1996); *Miller v. CIGNA Corp.,* 47 F.3d 586, 596 n. 8 (3d Cir.1995); *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 863 (5th Cir. 1993); *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039-41 (2d Cir. 1993)*; Griffiths v. CIGNA Corp.,* 988 F.2d 457, 468 (3d Cir. 1993); *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1470-71 (10th Cir. 1992).

In subsequent years, other courts have explicitly extended *Price Waterhouse*'s reach well-beyond the Title VII context, often with little or no analysis. *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 182 (3d Cir. 2009) (finding that in a § 1981 claim involving mixed motives, "[w]e focus on the mixed motives analysis under *Price Waterhouse*); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135-36 (8th Cir. 1999) ("To trigger *Price Waterhouse* analysis [under the ADA], a plaintiff must show that 'an impermissible motive played a motivating part in an adverse employment decision.'").

More often than not though, courts have applied a mixed motive analysis without indicating whether the analysis came from, or was justified by, *Price Waterhouse* or the 1991 Title VII amendments. *See Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 965 (10th Cir. 2002) (quoting a Title VII case in support of applying mixed motive analysis in an ADA context: "A mixed motive instruction is ... appropriate in any case where the evidence is sufficient to allow a trier to find both forbidden and permissible motives."); *Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d

31, 42 (1st Cir. 1998) (assuming that either *Price Waterhouse* or Title VII mixed motive analysis applies to the ADA, but declining to decide which).

Based upon this long history of applying *Price Waterhouse*'s mixed motive analysis beyond the confines of Title VII discrimination suits, there was, until recently, every reason to think this analysis had continuing applicability to the ADA. This was a sensible conclusion, as there is nothing in the *Price Waterhouse* analysis of the "because of" standard and the associated evidentiary burden that pertains uniquely to Title VII; the opinion's principles are sweeping and broadly applicable. Further, as previously discussed, Congress' enactment of the ADA immediately after *Price Waterhouse* was decided gives rise to a reasonable inference that Congress intended for the Court's interpretation of the "because of" standard to apply to the ADA.

In 2009, however, the Supreme Court cast considerable doubt upon the applicability of mixed-motive analysis to statutes other than Title VII. In *Gross v. FBL Financial Services,* the Court raised *sua sponte* the question of whether the Age Discrimination in Employment Act of 1967 (ADEA) authorized a mixed-motive age discrimination claim. 557 U.S. 167, 169 (2009). The Court concluded that it does not. *Id.* After a cursory examination of the relevant case law and statutory history, the Court examined the ADEA's causation standard and determined that "because of" means that a plaintiff must prove by a preponderance of the evidence "that age was the 'but-for' cause of the challenged employer decision." *Id.* at 178. Furthermore, the "burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 180. To those who would consider the *Price Waterhouse* controlling, the Court indicated that *Price Waterhouse* was so fraught with problems in application that there was no "perceivable benefit to extending its framework to ADEA claims." *Id.* at 179. The Court also expressed grave doubt as to whether it would "have the same approach were it to consider the question [raised in *Price Waterhouse*] today in the first instance." *Id.* at 178-79.

The Court does not go so far as to abrogate *Price Waterhouse*, but it certainly signals that the Court might do so if the opportunity presented itself. And, although the holding addresses only the ADEA, its stark language leaves little doubt that the present Court shares little of Justice O'Connor's concern that placing the burden of proof entirely on the plaintiff's shoulders "demands the impossible" and disserves the deterrent purpose of Title VII.

Because *Gross* addressed only the ADEA, there is a strong argument that the *Price Waterhouse* burden-shifting doctrine remains controlling law outside of the ADEA context.[1] Still, the shadow of Gross is long and troubling. *See Bolmer v. Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010). This Court can hardly be faulted for being reluctant to hang its judicial hat on such a wobbly peg.

### "Because of" Equals "Motivating Factor": The Plain Language View

As previously mentioned, many mixed-motive decisions have adopted a "motivating factor" standard with minimal analysis, finding this interpretation "under a plain reading of the statute." *Pinkerton v. Spellings*, 529 F.3d 513, 516-17 (5th Cir. 2008). As a preliminary matter, I take issue with any characterization of this difficult subject as plain or obvious. If the issue had been simple, the Supreme Court would not have labored over it so long and unsuccessfully in *Price Waterhouse.*

Emblematic of this approach is *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir. 2005). The court first rejected "solely because of" as the appropriate causation standard under the ADA, just as we have. *Id.* at 1065. The court then concluded that a motivating factor standard is most consistent with the "plain language" and the purposes of the statute, holding that "the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation." *Id.* Finally, the court provided "Jury instructions required under the ADA" reflective of its holding:

---

[1] At least one court, the Fifth Circuit, has taken a stand along these lines, declaring that *Price Waterhouse* still controls Title VII retaliation claims post-*Gross*, in keeping with that court's longstanding precedent. *Smith v. Xerox Corp.*, 602 F.3d 320, 329-30 (5th Cir. 2010).

> [A]lthough the statute uses "because of" language, the ADA plaintiff need not show more than that impermissible motives were a "motivating factor" in any adverse action. The approach also reflects the fact that the evidence in a particular case may not suggest more than one possible reason for the challenged action.
>
> Under the first alternative . . . if the judge determines that the only reasonable conclusion the jury could reach is that discriminatory animus is the sole reason for the challenged action or that discrimination played no role in the decision, the jury should be instructed to determine whether the challenged action was taken "because of" the prohibited reason.
>
> The second alternative applies in a case in which the evidence could support a finding that discrimination is one of two or more reasons for the challenged decision, at least one of which may be legitimate. **In that case the jury should be instructed to determine whether the discriminatory reason was "a motivating factor" in the challenged action.**

*Id.* at 1065-66 (emphasis added).

What is striking, and in my view alarming, about these jury instructions is that there is no hint of either the balanced burden-shifting approach of *Price Waterhouse* or the modified approach of the present-day Title VII. Motivating factor is the causation standard, and apparently the end of the story.[2] This view of the motivating factor standard is entirely untethered from its historical moorings and dispenses, without justification, the backstop provided by the "same decision" test.

Perhaps the court in *Head* was fully aware that it was omitting a step. Perhaps it intentionally addressed only the issue of liability, leaving unspoken but implied the determination of damages, which would require giving the defendant the opportunity to

---

[2]The *Head* jury instructions, provided here in their entirety, are extracted from an earlier Ninth Circuit Title VII decision, *Costa v. Desert Palace,* 299 F.3d 838 (9th Cir. 2002), *aff'd*, *Desert Palace v. Costa*, 539 U.S. 90 (2003). In *Costa*, the court held that "the jury should be instructed to determine *first* whether the discriminatory reason was a 'motivating factor' in the challenged action." *Id.* at 856-57 (emphasis added). "[I]f the jury then finds that the employer has proved the 'same decision' affirmative defense by a preponderance of the evidence, 42 U.S.C. § 2000e-5(g)(2)(B), the employer will escape the imposition of damages and any order of reinstatement, hiring, promotion, and the like, and is liable solely for attorney's fees, declaratory relief, and an order prohibiting future discriminatory actions." *Id.* at 857. *Head* omits this second portion of *Costa*, leaving the reader to conclude that whether discrimination was a "motivating factor" is the only issue to be decided by the finder-of-fact.

show it would have taken the same action absent any discriminatory animus. But there is no evidence of such awareness or intention and the omission invites considerable misunderstanding.

Whatever causation standard this Court adopts, our opinion should provide clear instruction as to how that standard is to be applied procedurally. I conclude that it is insufficient, and perilous, to simply declare that, under the ADA, "because of" means "motivating factor," without also setting forth the second half of the *Price Waterhouse*/Title VII formula.

### "Because of" Equals "But-for": The Other Plain Language View

In *Gross v. FBL Financial Services, Inc.* the Supreme Court examined the "plain language" of the ADEA's "because of" standard and concluded that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." 557 U.S. 167, 176 (2009). What is most noteworthy about *Gross* is not this conclusion that "but-for" is the proper causation standard. After all, Justice O'Connor's *Price Waterhouse* concurrence concluded the same thing. *Price Waterhouse*, 490 U.S. at 262-63. It is the Court's conclusion that no burden shifting is allowed that marks the decision's real importance. According to *Gross*, the burden of proof is the plaintiff's alone. *Id.* at 180.

For the last three years, the lower courts have grappled with the implications of *Gross* outside of the ADEA context. Particularly noteworthy is a recent Seventh Circuit's decision concluding that *Gross*'s holding applies with full force to actions brought under the ADA: "a plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him *but for* his actual or perceived disability; proof of mixed motives will not suffice." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) (emphasis added).

The court examined and rejected the view that *Price Waterhouse*'s interpretation of Title VII's "because of" standard should apply to the ADA. *Id.* at 961. Just as the majority does here, the court adapted *Gross*'s reasoning and concluded that "a mixed-motive claim will not be viable under that statute." *Id.*

*Gross*'s rejection of mixed-motive analysis under the ADEA is predicated on a statement made early on in the opinion: "Because Title VII is materially different with respect to the relevant burden of persuasion, . . . [the Court's Title VII decisions] do not control our construction of the ADEA." 557 U.S. at 173. This reasoning simply does not withstand scrutiny applied to the ADA. Although Title VII is *now* different from the ADA "with respect to the relevant burden of persuasion," at the time the ADA was enacted, and thus the time Congress was expressing its intent, the standards were the same. *Serwatka*'s repudiation of *Price Waterhouse* mixed motive analysis under the ADA is thus contrary to the relevant statutory history and represents a radical departure from established law.

The Seventh Circuit's decision to discard its own precedent and return to a time before *Price Waterhouse* is insufficient reason for this Court to do likewise. Although some may argue that the decision anticipates where the Supreme Court is headed with regard to the ADA, this Court's duty is to apply the law as it is, not as it might someday be.

### The Explicit Link View

Although the ADA is a separate and distinct statute from Title VII, the ADA does not contain its own enforcement provisions. Instead it incorporates the "powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9" of Title VII. 42 U.S.C. § 12117(a). The five provisions referenced in this incorporating provision are summarized as follows:

> **42 U.S.C. 2000e-4 (Equal Employment Opportunity Commission)**: Sets forth the powers, composition, etc. of the EEOC.
>
> **42 U.S.C. 2000e-5 (Enforcement Provisions)**: Describes powers of the EEOC to prevent unlawful employment practices, cross-referencing the definitions of such practices in 2000e-2 and 2000e-3; describes process of filing charges with the EEOC and related State or local enforcement proceedings; sets forth the rules for filing related civil actions; and *specifies the remedies available to the plaintiff in such actions.*

**42 U.S.C. 2000e-6 (Civil Actions by the Attorney General)**: Sets forth the procedures under which the Attorney General may bring action against employer engaged in unlawful employment practices.

**42 U.S.C. 2000e-8 (Investigations)**: Describes evidentiary issues pertaining to charges filed under 2000e-5.

**42 U.S.C. 2000e-9 (Conduct of hearings and investigations pursuant to section 161 of Title 29)**: Links the EEOC's powers to that of the National Labor Relations Board.

The only provision among these five related to remedies is § 2000e-5. The only subsection pertaining to the issues before this Court is § 2000e-5(g)(2)(B), which provides certain relief and prohibits other relief under specific circumstances.

Most of the circuit courts that have reviewed the matter have either assumed or concluded that the ADA incorporates the entire procedural scheme from Title VII: the "motivating factor" standard for liability expressed in § 2000e-2(m) and the "same decision" defense to damages set forth in § 2000e-5(g)(2)(B). *See Doane v. City of Omaha*, 115 F.3d 624, 629 (8th Cir. 1997) (recognizing that 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B) apply in actions brought pursuant to the ADA); *see also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999)*; Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir. 1996); *Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301 (8th Cir. 1995).

The *Serwatka v. Rockwell Automation, Inc.* decision by the Seventh Circuit challenges the assumptions implicit in these decisions. 591 F.3d 957, 962 (7th Cir. 2010). The court notes that Title VII's motivating factor test appears in the statute's liability section, 2000e-2(m). The ADA's incorporation of "powers, remedies, and procedures" does not directly reference this provision and, *Serwatka* reasons, the "motivating factor" standard is therefore not incorporated into the ADA. *Id.*

The question that *Serwatka* leaves inadequately addressed is this: If the ADA's incorporation provision does not incorporate the motivating factor test, what does it incorporate with regard to remedies in civil suits? To answer this question, we must

scrutinize more closely 42 U.S.C. 2000e-5(g)(2)(B), keeping in mind that the ADA provides no other enforcement or remedies provision:

> On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--
>
> **(i)** may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
>
> **(ii)** shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

This provision does two things: it permits certain relief (declaratory and injunctive relief and attorneys fees) and it prohibits other relief (e.g., damages, reinstatement orders). But this permitting and prohibiting is within a very narrow context, i.e., when the employee has demonstrated that discrimination was a motivating factor in the adverse employment decision under § 2000e-2(m) and the employer has, in turn, proven that he would have made the same decision had discriminatory animus not been a factor.

By incorporating this provision into the ADA, Congress effectively declared that ADA plaintiffs are entitled to the remedies (and the limits on remedies) described therein. Since these remedies have meaning only in the context just described, it is more than reasonable to assume that the entire context, meaning both the motivating factor test and the same decision test, is also incorporated into the ADA. This conclusion is underscored by the fact that 2000e-2(m), the motivating factor test for liability, is expressly referenced (twice) in this expressly incorporated provision.

*Serwatka* bases its contrary assumption on a quote from a law student note stating, "The motivating factor amendment [to Title VII] is not a power, remedy, or procedure; it is, instead, a substantive standard of liability." 591 F.3d at 962 (quoting John L. Flynn, Note, *Mixed-Motive Causation Under the ADA: Linked Statutes, Fuzzy*

*Thinking, and Clear Statements,* 83 Geo. L.J.2009, 2042 (1995)). What this statement ignores is that Title VII's remedies provision assumes the application of its substantive standard of liability. Perhaps more importantly, to effectively edit out the reference to 2000e-2(m) is to render Title VII's only remedies section devoid of meaning as to the ADA, nullifying Congress's clearly expressed intent to incorporate into the ADA Title VII's remedies. Under the most basic rules of statutory construction, such a reading is impermissible. *See Broad. Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 769 (6th Cir. 2005) ("Courts are to make every effort to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless."); *see also Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 527 (1981) (Scalia, J., concurring in the judgment) (stating that the Court's task is to give meaning to the law in a way that avoids producing an absurd result). The only interpretation of the ADA's incorporation provision that does not render its incorporation of § 2000e-5(g)(2)(B) meaningless is that the ADA incorporates Title VII's two-part burden-shifting framework.

## Conclusion

To construe the debate over the ADA's causation standard as a war over two catch-phrases – "but-for" and "motivating factor"– is to misunderstand the real nature of the issue. If the definition of "because of" were truly what was at issue here, we would have to conclude that Justice O'Connor in *Price Waterhouse* and Justice Thomas in *Gross* are in complete agreement, for they both opined that "because of" means "but-for." But of course these opinions are diametrically opposed to one another. *Price Waterhouse* held that the plaintiff's burden of persuasion is limited to showing that discrimination was a substantial factor in an adverse employment decision, with the burden then shifting to defendant to rebut the presumption of but-for causation. *Gross* held that, under the ADEA at least, the burden of proof to establish but-for causation is plaintiff's alone.

It is worth noting that some courts have actually defined "motivating factor" and "but-for" as meaning precisely the same thing. In a case often cited in support of the "motivating factor" viewpoint, the Seventh Circuit stated,

> To be a motivating factor, then, the forbidden criterion must be a significant reason for the employer's action. It must make a difference in the outcome of events that it can fairly be characterized as the catalyst which prompted the employer to take the adverse employment action, and a *factor without which the employer would not have acted.*

*Foster v. Arthur Andersen, LLP,* 168 F.3d 1029, 1033-34 (7th Cir. 1999) (emphasis added). In other words, a motivating factor *is* a but-for cause. *See* Black's Law Dictionary 212 (7th ed. 1999) (defining but-for cause as "[t]he cause without which the event could not have occurred.").

Viewed in this light, the question before the Court is really not about causation standards at all, but about the appropriate sharing of the burden of proof. Were it not for the ADA's provision linking it to Title VII's remedial scheme,  I would conclude that *Price Waterhouse* established the appropriate burden-shifting paradigm applicable to the ADA's "because of" standard. By linking the two statutes, however, Congress apparently intended the modest revision of *Price Waterhouse's* burden-shifting to apply to both Title VII and the ADA. Accordingly, I would hold that for actions brought under the ADA, "motivating factor" is the applicable causation standard for establishing liability, with the "same decision" test operating as an affirmative defense to a claim of damages. Because I believe it trades one overreaching interpretation of the statute for another, I respectfully dissent from the majority's importation of *Gross*'s but-for causation standard into the ADA.