NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0582n.06

No. 14-3828

**FILED**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

AUG 1 7 2015

DEBORAH S. HUNT, Clerk

CHRISTOPHER J. MOFFAT, CLARISSA E.
THOMPSON, and PATRICIA A. SCHMIDT,

    Plaintiffs-Appellants,

v.

WAL-MART STORES, INC.; WAL-MART
ASSOCIATES, INC.; and WAL-MART STORES
EAST, LP,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

---

**BEFORE: KETHLEDGE and WHITE, Circuit Judges; LUDINGTON, District Judge.** [*]

**PER CURIAM.** Christopher Moffat, Clarissa Thompson, and Patricia Schmidt appeal from the district court's grant of summary judgment to their former employer, Wal-Mart Stores East, LP (Walmart),[1] on their age discrimination claims brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, and analogous state law, Ohio Rev. Code § 4112.02. Because there are genuine issues of material fact regarding whether Walmart's proffered reason for discharging Plaintiffs was pretext for age discrimination, we **REVERSE.**

---

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] In addition to Wal-Mart Stores East, LP, Plaintiffs named Wal-Mart Stores, Inc., and Wal-Mart Associates, Inc., as defendants in their amended complaint. But as the district court noted, Plaintiffs do not dispute that Wal-Mart Stores East, LP, is the sole proper defendant.

## I.

Walmart employed Plaintiffs at its Brooklyn, Ohio, store in the Lawn and Garden Department. Moffat worked as a sales associate for seven years, and Thompson for more than ten years. Schmidt, who served for more than sixteen years, was employed as the Brooklyn store's Lawn and Garden Department Manager. According to Assistant Store Manager Brandon Donegan, Walmart assigned six employees to work primarily in the Lawn and Garden Department: Moffat (age 54), Thompson (62), Schmidt (59), and three younger associates (19, 21, and 23).

In June 2010, Walmart Asset Protection Coordinator Debbie Jenkins, while reviewing surveillance camera footage, saw Plaintiffs bag plants at a cash register, set the bags aside, and later carry the bags out of the store without paying. She suspected Plaintiffs of theft, and informed her supervisor, 31-year-old Market Asset Protection Manager Joe Theobald, who also viewed the video footage. Theobald instructed her to complete an investigation "by the book."

As part of her investigation into the suspected theft, and after discussing the video with Theobald, Jenkins, along with an assistant store manager, interviewed each Plaintiff individually. After Plaintiffs admitted to taking the plants, Jenkins accused them of violating Walmart's policy against accepting gifts from vendors. Walmart's Statement of Ethics, to which employees must adhere, states that an employee "is to never accept gifts or entertainment from any supplier, potential supplier, government, or any person the associate has reason to believe may be seeking to influence business decisions or transactions."[2] The policy does not, however, define the term "gift."

---

[2] There are two versions of Walmart's Statement of Ethics in the record. The parties do not contend that there are material differences between them.

According to Thompson, an employee of Bonnie Bell Plants (Bonnie Bell)—a Walmart vendor and owner of the plants[3]—removed the plants that "didn't look good" from the display racks and placed them in a cart. He then took the cart to Thompson and asked her to throw the plants away. Normally, the vendor's employee loads the plants into his truck—rather than discard them at the Walmart store—but the store's greenhouse had had an aphid infestation. Thompson, who apparently has a "green thumb," noticed that some of the plants could be salvaged and commented to the Bonnie Bell employee that she "could save some of [the plants]," to which he responded, "[G]o for it." Thompson shared the vendor's statement with Moffat and Schmidt, and they each took some plants they thought could be saved. Thompson discarded the remaining plants.[4]

During the interviews with Jenkins, Plaintiffs each identified others they believed engaged in similar conduct. Moffat testified that he was sure he told Jenkins and the assistant manager that he knew of at least three Lawn and Garden associates who had taken plants in previous years, including a department manager. Thompson similarly stated that several employees took discarded plants from Bonnie Bell in prior years and that members of management knew the employees were taking the plants. Schmidt told Jenkins that associates

---

[3] Bonnie Bell's products were "pay-per-scan" merchandise. Under Walmart's pay-per-scan program:

> If an item is a pay-per-scan item, Walmart does not pay the vendor for the item unless and until it is sold to a customer. Accordingly, if the item is not sold and the vendor decides to take the item off of Walmart's shelves and either try to sell it elsewhere or destroy it, for whatever reason, Walmart is not obligated to pay the vendor anything for that item. Essentially, the item never "belongs" to Walmart. Instead, in exchange for providing the vendor a venue in which to sell their [sic] product, Walmart receives a specified portion of the sale price of the item.

[4] Thompson planted the plants she took in a neighbor's yard where they thrived. The plants Moffat and Schmidt took did not revive.

occasionally received items, including cosmetic samples, mouthwash, and greeting-card envelopes, from other vendors.

Plaintiffs also provided a written statement to Jenkins. Moffat wrote: "Bonnie Plant, as they do each year, threw out their vegetables. They told Clarissa [Thompson] to take whatever she wanted & throw the rest away. She took some, Pat [Schmidt] & I took 1 pepper plant & 1 oregano plant. Anyone else? I don't know." In her statement, Thompson wrote:

> I honestly did not realize I was doing wrong in taking the tomato [plants] that were being thrown away. I took 3. I also was not aware that I cannot accept a cup of coffee or plants from [a] customer's garden. I would in no way ever[] do wrong to Wal-Mart. I try to save and do as much as I can for the company and customers.
>
> I am very sorry and will not accept gifts or anything ever again.

Schmidt stated:

> I received tomato plants from a vendor that were going to be thrown away and said that we may have them[.] From what I was told[,] they have done this in the past[.] I did not know that we were not allowed to receive gifts from any one. I am sorry for what I done and [it] will never happen again[.] My associate done this [for] five years and said that the vendor didn't want to throw away and said it was fine sense we don't pay for them[.] Again I am very sorry[.] I would never had done this if I known this[.] I am new in this Dept. [sic throughout]

After interviewing Plaintiffs and taking their written statements, Jenkins turned her investigative file over to Theobald. The file included records with Plaintiffs' dates of birth. In his deposition, Theobald could not recall whether he reviewed the file before deciding to terminate Plaintiffs' employment; but he testified that, ordinarily, he does not review the file, including written statements, before deciding whether to discipline an employee. Based on Plaintiffs' admissions to taking plants, Theobald considered their conduct as demonstrating "compromised integrity," which, under Walmart's Coaching for Improvement Policy, can qualify as "gross misconduct" and subject the employee to immediate termination. He decided to discharge Plaintiffs.

Jenkins and an assistant store manager met with each Plaintiff to communicate Theobald's decision. Plaintiffs were provided an exit interview form that states the reason for the termination as "Gross Misconduct—Integrity Issue." On Moffat's form, the manager commented: "Chris was identified by Asset protection as receiving gratuity from a vendor which is direct violation of the company's ethics policy." The manager wrote on Thompson's form that "Clarissa is being terminated due to accepting gifts from a local vendor[;] the gifts were tomato plants and were near death but Walmart policy states that no associate working for Walmart will accept gifts from a vendor no matter how small." Schmidt's exit interview form states that "Patricia was accepting flowers from vendors with out [sic] paying for them."

Walmart discharged Schmidt on June 21, Thompson on June 23, and Moffat on June 28, 2010. On June 23 and June 29, 2010—the same day it discharged Thompson and one day after it discharged Moffat—Walmart hired 19- and 21-year-old temporary associates (both later made permanent) "to work the hours that Mr. Moffat and Ms. Thompson would have worked." Walmart did not replace Schmidt; Walmart claimed that because the store had too many department managers, it transferred her duties to another department manager who was older than Schmidt, but who was later replaced after her retirement by a 26-year-old in August 2010. Walmart does not dispute that Plaintiffs were otherwise good employees.

The district court determined that Schmidt could not establish a prima facie case of age discrimination because she did not show that Walmart treated substantially younger, similarly situated employees better, and concluded that Plaintiffs did not rebut Walmart's nondiscriminatory reason for discharging them and thus could not show pretext. Plaintiffs now appeal the district court's entry of summary judgment in Walmart's favor.

## II.

We review de novo a district court's order granting summary judgment. *Rudisill v. Ford Motor Co.*, 709 F.3d 595, 600 (6th Cir. 2013). An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Mitchell v. Fankhauser*, 375 F.3d 477, 479 (6th Cir. 2004). In determining whether the grant of summary judgment was proper, "we must view all evidence in the light most favorable to the nonmoving party." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The mere existence of a scintilla of evidence to support the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.

Under the ADEA, it is unlawful for an employer to discharge an employee who is at least 40 years old because of the employee's age. 29 U.S.C. §§ 623(a)(1), 631; *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008). Similarly, it is an unlawful discriminatory practice in Ohio for an employer to discharge an employee because of the person's age. Ohio Rev. Code § 4112.02(A). Age-discrimination claims brought under Ohio law are analyzed under the same standards as claims brought under the ADEA. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005). A plaintiff can prove unlawful age discrimination under the ADEA with circumstantial evidence—that is, "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

## A.

A plaintiff without direct evidence of discrimination can establish a prima facie case of age discrimination by showing: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker, or there are circumstances that support an inference of discrimination. *Mickey*, 516 F.3d at 521; *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012); *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (internal quotation marks omitted).

Walmart does not dispute that Moffat and Thompson established a prima facie case of age discrimination; however, it argues that although Schmidt can establish the first three elements, she cannot show Walmart treated her less favorably than similarly situated employees outside the protected class.[5] Schmidt contends younger employees (1) had engaged in the same

---

[5] Schmidt does not dispute that she was not replaced—by a younger employee or otherwise. But Walmart's claim that Schmidt failed to prove that the three younger employees are outside the protected class is misplaced. An ADEA plaintiff need not show that she was treated less favorably than someone outside the protected class. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out *because of his age*. . . . [T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). Rather, she must show circumstances that support an inference of unlawful age discrimination. *Blizzard*, 698 F.3d at 283; *Clay*, 501 F.3d at 703; *see also Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (stating that the fourth element requires a showing that a plaintiff "suffered [the adverse employment action] under circumstances which give rise to an inference of unlawful discrimination"), *abrogated on*

conduct as Plaintiffs without consequence, (2) were disciplined less harshly for more serious misconduct, and (3) had accepted items from vendors without discipline. Walmart maintains that there is no evidence that the three younger associates Schmidt identified are outside the ADEA's protected class and that the evidence does not support that the younger workers accepted plants from a vendor or were subject to discipline or investigation by Theobald. The district court concluded that the younger employees were not proper comparators, in part because the younger employees did not share the same "ultimate decision-maker" (i.e., Theobold) as Schmidt.

Contrary to Walmart's contention, Schmidt presented a prima facie case of age discrimination because the circumstances of her discharge—identical to her co-plaintiffs in all relevant respects other than her replacement[6]—support an inference of age discrimination. The evidence shows that Walmart discharged *three* older employees (ages 54, 59, and 62 years) for engaging in the *same* conduct, leaving the Lawn and Garden Department staffed primarily by three significantly younger employees (ages 19, 21, and 23),[7] and hired two significantly

---

*other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). Such circumstances may, but need not, include an allegation that plaintiff was treated less favorably than an employee who is at least six years younger. *Id.* at 283–84; *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) (establishing bright-line rule that "an age difference of six years or less between an employee and a replacement is not significant").

[6] Although Schmidt was the Lawn and Garden Department Manager, and Moffat's and Thompson's supervisor, Walmart does not contend that her alleged misconduct was more egregious than Moffat's or Thompson's.

[7] Walmart argued below that Plaintiffs' representation that the Lawn and Garden Department was staffed by five significantly younger employees is factually unsupported. Walmart asserted that at least fifteen employees worked in the Lawn and Garden Department, relying on an untitled spreadsheet in the record, and that their ages ranged from 19 to 77 years. Contrary to Walmart's argument, Plaintiffs' contention is supported by record evidence; Walmart's is not. First, Plaintiffs cite Assistant Store Manager Donegan's deposition, in which he was asked to identify on the spreadsheet the employees who "worked primarily in the lawn and garden department as opposed to some other department at the Brooklyn Wal-Mart."

younger employees as replacements (ages 19 and 21).[8] The composition of the Lawn and Garden Department before and after Plaintiffs' terminations supports an inference of age discrimination. We conclude Schmidt satisfied the fourth prong and thus established a prima facie case of age discrimination.

## B.

Once a plaintiff has satisfied her initial burden, the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse decision. *Mickey*, 516 F.3d at 521. Plaintiffs do not dispute that Walmart articulated a legitimate, nondiscriminatory reason for its discharge decision—that Plaintiffs violated its policy against accepting gifts from suppliers. Thus, the burden shifts to Plaintiffs to show that the stated reason is pretext for age discrimination. *Id.*

### 1.

To avoid summary judgment, a plaintiff must present evidence from which a jury could reasonably find that the employer's proffered reason for the adverse employment action was not the real reason that it discharged her and that unlawful age discrimination was the true reason. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). A plaintiff generally can show that the stated reason was not the real reason by showing that it (1) has no basis in fact, (2) did not actually motivate the adverse employment decision, or (3) was insufficient to motivate discharge.

---

Donegan identified six individuals, including the Plaintiffs. Second, the spreadsheet alone does not support Walmart's version of the facts because it does not identify the departments of the employees listed on it.

[8] In its brief, Walmart concedes that it replaced Moffat and Thompson with 19 and 21-year-olds, although it asserts the two new hires were temporary associates. That the new hires were temporary—rather than permanent—does not alter our analysis. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 318 (6th Cir. 2007) ("In cases where the new hire takes on the plaintiff's former job responsibilities, merely designating the new hire 'temporary' will not defeat the fourth element.").

*Blizzard*, 698 F.3d at 285. This first category includes evidence that the employer's basis for the plaintiff's discharge never happened, and the second category requires the plaintiff to admit the factual basis underlying the employer's proffered reason and further admit that the conduct could motivate dismissal. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). "The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Id.* This court does not require rigid application of these three criteria; rather, the question is a commonsense one: "Did the employer fire the employee for the stated reason or not?" *Blizzard*, 698 F.3d at 285. At the summary-judgment stage, the plaintiff need only rebut the employer's proffered rationales to carry her burden; she need not disprove them. *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012). Courts should exercise caution in granting summary judgment for the defendant once the plaintiff has made a prima facie case and a showing of pretext because "an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004) (citations omitted).

Here, Walmart asserts that Theobold discharged Plaintiffs for violating its gifts policy. But Walmart does not have a zero-tolerance rule for violations of that policy, since Theobold and Jenkins both admitted that they could have allowed Plaintiffs to keep their jobs. And Plaintiffs each testified that they did not know they had violated the gifts policy when they took the plants home. Thus, Walmart fired the plaintiffs for what was at worst a technical—and seemingly innocent—violation of the gifts policy. Given that Walmart's discipline guidelines encourage

managers to try less-draconian measures before firing an associate for any reason, a reasonable jury could find that Walmart did not dismiss Plaintiffs for taking the plants.

Other indicia of pretext appear in the record, though not argued on appeal by Plaintiffs. Consistent with his indifferent attitude, Theobald testified that after discharging Plaintiffs, he reviewed their files and learned that they alleged younger employees had taken plants in previous years, but he did not open an investigation into the allegations or instruct another person to do so. Further, Theobald's decision-making process did not comport with Walmart's Investigation/Suspension Policy.[9] Under that policy, Human Resources conducts all investigations, except those involving fraud or theft. When theft or fraud is suspected, Asset Protection or Corporate Investigations will investigate, not Human Resources. During a theft investigation, if Asset Protection determines there simply was no theft or fraud, it will continue and complete the investigation; however, if Asset Protection determines that an associate violated Walmart policy but did not engage in theft or fraud, as Jenkins and Theobald did here, it must consult with Human Resources before discharging the employee. Human Resources, in such a case, must approve Asset Protection's decision to dismiss the employee, after it reviews

---

[9] The parties make no issue over Schmidt's role as a department manager. Although Walmart maintains that "no Walmart salaried member of management had ever given [Plaintiffs] permission to take any plants home," Schmidt (and a prior Lawn and Garden Department Manager) tacitly approved the taking of the discarded plants when she also took plants. (Emphasis removed.) Walmart suggests only salaried managers, not hourly managers like Schmidt, had authority to resolve ethical issues. However, that distinction is at odds with Walmart's written policies. According to Walmart's written job description for the Lawn and Garden Department Manager, an essential function of Schmidt's duties included supervising Lawn and Garden Department employees by "teaching and supporting Company policies and procedures [and] ensuring compliance." The job description also required her to be proficient in ethics and compliance. Moreover, if an employee has questions about a gift or an ethical issue, Walmart policy instructs him to contact his supervisor or the Ethics Office. A jury might reasonably find that Walmart's stated reason for dismissing Moffat and Thompson is pretexual in light of a manager's tacit approval of the alleged misconduct.

all relevant records. However, Theobald was the sole decision-maker here, as Walmart emphasizes, and it appears he did not consult with Human Resources, or seek and receive approval to discharge Plaintiffs.[10] All of this is evidence from which a jury could reasonably conclude that Plaintiffs' alleged misconduct did not actually motivate Walmart's decision, and thus, Walmart's proffered rationale was not the real reason for discharging Plaintiffs.

## 2.

Even if a plaintiff provides sufficient evidence to create a factual dispute regarding the falsity of the employer's proffered reasons, the employer is entitled to summary judgment if the honest-belief rule applies. Where the employer has an "honest belief" in the nondiscriminatory basis on which it has made its adverse employment decision, the employee does not show pretext. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012). The "key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007) (internal quotation marks omitted). An employer that reasonably and honestly relies on particularized facts in making an adverse employment decision is entitled to summary judgment on pretext, "even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen*, 580 F.3d at 401 (internal quotation marks omitted). However, if the plaintiff can show that the employer's decisional

---

[10] Plaintiffs allege that younger employees had been disciplined less harshly for more serious misconduct and that the younger employees are proper comparators. For instance, a 26-year-old associate was reprimanded for "writting [sic] a bad check and then recieving [sic] a payroll advance," which the supervisor concluded was "like stealing merchandis[e] from the store." Walmart contends, and the district court agreed, that the younger employees were not similarly situated to Plaintiffs because they were disciplined by someone other than Theobald. The disparity in discipline (and decision maker) is perhaps explainable in part by Theobald's apparent failure to follow Walmart's Investigation/Suspension Policy in investigating Plaintiffs' alleged policy violations.

process was "unworthy of credence" by producing "sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action," then the honest-belief defense does not apply. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807–08 (6th Cir. 1998) (internal quotation marks omitted).

Here, Theobald's own testimony shows that he did not ascertain or know all the relevant facts, and that he did not think it important to know such facts before terminating Plaintiffs' employment. The honest-belief defense, therefore, does not apply. In sum, considering the totality of the circumstances, a jury could reasonably find that Walmart's proffered reason for discharging Plaintiffs is false.

## C.

A plaintiff's prima facie case, together with evidence showing the employer's proffered reason is false, permits the jury to infer the ultimate fact of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–49 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). No additional proof of discrimination is required because "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147; *Hicks*, 509 U.S. at 511. Judgment as a matter of law may be appropriate in cases where, for example, the plaintiff's prima facie case is not strong or the plaintiff creates "only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."

*Reeves*, 530 U.S. at 148. There is sufficient evidence here, however, to allow a jury to reasonably find that Walmart's decision to discharge Plaintiffs was discriminatory.[11]

## IV.

For these reasons, we **REVERSE**.

---

[11] Plaintiffs assert that certain ageist remarks by a Walmart Senior Executive constitute evidence of discriminatory animus, citing an internal memorandum proposing cost-savings strategies to employee benefits. Specifically, Plaintiffs contend the memorandum's linking of its aging workforce and higher health-care costs indicates bias. Assuming the memorandum does indicate age-related bias, this court evaluates statements allegedly showing an employer's age bias under the following four factors, taking all of the circumstances into account: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002). The memorandum fails all four factors. It was drafted in 2005 by a Senior Executive for Walmart's Board of Directors, and there is no evidence that Theobald read the memorandum at any time before dismissing Plaintiffs.

**HELENE N. WHITE, Circuit Judge, concurring.** I join in the per curiam opinion but write separately to explain that a jury could also reasonably find that Walmart's asserted reason for discharging Plaintiffs—that they accepted a gift—has no basis in fact.

Plaintiffs maintain Walmart's decision has no basis in fact because their conduct did not amount to a violation of Walmart's Statement of Ethics; more specifically, taking plants discarded as sick and dying by the owner is not accepting a gift in the general sense of the term or under the gift policy. Walmart argues that its Statement of Ethics clearly prohibited Plaintiffs' conduct, that Plaintiffs essentially argue that Walmart's interpretation of its own policy is unreasonable, and that the court must defer to Walmart's interpretation of its policy. Although it is true Plaintiffs admitted taking the plants, a jury could reasonably find, based on the testimony of Walmart employees, that Walmart's policy, which does not define "gift," does not prohibit taking sick plants a vendor has asked the employee to discard.

Walmart accepts, as it must at this stage, Thompson's testimony that the Bonnie Bell employee placed dead or dying plants in a cart and asked Thompson to throw the plants away, and after she commented she could save a few, the vendor's employee responded, "[G]o for it." Thus, whether Plaintiffs violated Walmart's policy on gifts turns on whether Plaintiffs' taking the discarded sick plants constitutes a gift.

Both Jenkins's and Theobald's testimony disputes Walmart's contention that Plaintiffs accepted a gift. Asked if taking an item from a vendor who requested the employee throw the item into the garbage violates Walmart's gift policy, Jenkins replied, "No." She further admitted that retrieving something from the trash does not constitute acceptance of a gift or a violation of the gift policy. Despite this understanding of the policy, Jenkins did not interview the Bonnie Bell employee to confirm Thompson's version of events.

Similarly, Theobald was asked, "If the vendor[] says, would you mind throwing this in the trash for me and the employee looks at it, throws it in the trash, but then decides, well, I think I'll take it home, is that a violation of the policy?," and answered, "I don't believe that they at that point would have violated the Gifts and Entertainment Policy, no."[1] Nevertheless, the actual circumstances of Plaintiffs' taking of the plants did not matter to Theobald. Although Theobald testified that "it depends on what the vendor is saying" to the associate in determining whether the employee violated the gift policy, he maintained that he ordinarily makes employment decisions without having "possession of all the facts," even though he agreed that it is "important that you learn all of the important facts about what has happened . . . before deciding whether you impose discipline at all." And in this case, he testified he made the decision to discharge Plaintiffs without knowing whether the plants were pay-per-scan items or garbage. Indeed, he maintained that those facts did not matter because Plaintiffs "left with merchandise from the facility" without paying, so he viewed their actions as demonstrating "compromised integrity" and decided to discharge them.[2] A jury could reasonably find that Walmart's stated reason for discharging Plaintiffs has no basis in fact because Plaintiffs did not accept a gift in violation of

---

[1] At oral argument, Walmart's counsel was unable to offer a material distinction between retrieving discarded plants from the garbage and intercepting discarded plants before they are physically placed in the garbage, and I perceive none. In either case, the plants would be regarded as dying and having no value, and would be abandoned. *See Long v. Noah's Lost Ark, Inc.*, 814 N.E.2d 555, 563 (Ohio Ct. App. 2004) (abandonment is the "absolute unequivocal relinquishment" of property "without regard as to who may take over" ownership; it is the "virtual throwing away" of property).

[2] One Walmart document lists theft, violent act, dishonesty, and misappropriation of company assets as examples of "Gross Misconduct—Integrity Issue."

Walmart's gift policy,[3] and, as discussed in the per curiam opinion, Theobald did not have an honest belief that the policy had been violated.

---

[3]Additionally, Theobald's disregard for ascertaining all the relevant facts before implementing an adverse employment decision is additional evidence from which a jury could reasonably find that Plaintiffs' alleged violation of the gift policy did not actually motivate Walmart's decision.

**THOMAS L. LUDINGTON, District Judge, dissenting.** I write separately to respectfully address two primary points. First, Appellant Schmidt, who was not replaced by a younger employee, has not met her prima facie burden to produce evidence raising an inference of Wal-Mart's age discrimination. Second, Appellants, in my view, have not identified anything about Theobald's interpretation and implementation of Wal-Mart's ethics policy that suggests an ageist agenda. I would affirm the district court.

## I.

The facts as set forth by the majority are largely uncontroversial. It is worth noting, however, that the ultimate decision-maker in this case, Joseph Theobald, was not responsible for conducting the initial investigation into the Appellants' alleged misbehavior. Rather, Theobald's subordinate, Asset Protection Coordinator Debbie Jenkins was. Theobald's job was to review her investigation and reach a personnel decision based on the facts she gathered. Jenkins checked with Theobald twice during the investigation: once at its outset, when she viewed security footage of Appellants taking inventory from the store without paying for it, and again when her investigation was complete. When Theobald learned that Appellants acknowledged receiving the merchandise from a vendor, he made the decision to terminate their employment.

## II.

### A.

Schmidt did not demonstrate a prima facie case of age discrimination. The majority's contention that she did rests primarily on the fact that Schmidt was terminated together with two other employees, Moffat and Thompson, as a result of the same plant-taking incident. But that conclusion conflates an important distinction between Moffat and Thompson's prima facie cases and Schmidt's prima facie case. Because Schmidt produced no direct evidence of age

discrimination and Schmidt was not replaced by a younger employee, the district court correctly concluded that she could not establish disparate treatment inferentially utilizing the *McDonnell-Douglas* burden shifting analysis.

As the majority correctly emphasizes, the requirement for inferentially establishing a prima facie case of age discrimination is not as stringent as that applied by the district court. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) (explaining that the fourth element of a prima facie case requires only "circumstances that support an inference of discrimination"). A plaintiff need not show she was replaced by a younger employee if she can show circumstances that give rise to an inference of age discrimination. The majority, however, then proceeds to apply a rule, the authority for which I am unaware, that permits Schmidt to establish a prima facie case by simple association. That is, if a plaintiff such as Schmidt is terminated along with other employees who can establish a prima facie case—even if they do so only by identifying a younger replacement—the plaintiff is entitled to borrow the inference of discrimination that arises out of the relative ages of her co-workers and her co-workers' replacements. This is a new rule that incorporates disparate-impact-like reasoning into a disparate treatment case. There are several problems with such a rule.

The first problem relates to the deficiency of corroborative evidence justifying application of the rule in this case. Schmidt offers nothing analytically to justify associating her case with Moffat and Thompson's cases other than the fact that it arose in the context of the plant-taking incident, which she also argues did not actually motivate Wal-Mart's decision. Schmidt has not identified any evidence about the process Wal-Mart employed to hire Moffat and Thompson's replacements that suggest age was at all relevant. Schmidt has not marshaled any information about the number of applicants and their ages or the selection method that would

suggest age was a discriminating factor. And Schmidt's only effort to address the subject of age at all was to explain in her termination interview that she thought there were younger employees who she had heard engaged in similar misconduct but who were not terminated. But, despite the availability of discovery Schmidt produced no evidence that the names she identified in the termination interview were actually employees, that they were in fact younger employees, that they engaged in similar misconduct or that their alleged misconduct was responded to by the same decision-maker. That is, in summary, Schmidt offered no admissible evidence that Wal-Mart was discriminating based on age other than observing that two of her co-workers were replaced by younger employees.

The second problem with this rule is that deploying this sort-of disparate impact analysis into the calculus of the *McDonnell-Douglas* prima facie case evidentiary framework has no express limitation. Is it important that it was two of three employees that were replaced by younger workers? Does the piggy-backing plaintiff have any burden of proof concerning the circumstances of replacement hires? And how should Wal-Mart's (or any future defendant's) usual opportunity for rebuttal in disparate-impact analysis be reviewed when employed to satisfy the prima facie element of an inference-of-disparate-treatment age discrimination claim? Respectfully, proof of the replacement of two out of three employees with younger employees does not, without more, justify an inference of disparate age discrimination.

Although I agree the district court erred in applying the wrong standard to Schmidt's prima facie case, I would affirm the result reached by the district court.

## B.

The decision to discredit Theobald's termination of Appellants is more problematic. While district courts should hesitate to dispose of a case on summary judgment after a prima

facie case has been established, district courts should be equally hesitant to turn the interpretation of corporate policy into a question for a civil jury. There is no shortage of authority urging caution when it comes to analyzing the internal personnel operations of a corporation when there are no indicia, even faint, of discriminatory animus. *See, e.g., Haughton v. Orchid Automation,* 206 F. App'x 524, 532 (6th Cir. 2006) (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 585 (6th Cir. 1992)) (internal quotation marks omitted). Before judgment may be passed on a defendant's employment decision a plaintiff must show that "discrimination was the real reason for the adverse employment action." *Haughton,* 206 F. App'x at 531-32 (6th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)); *see also Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1116-17 (6th Cir. 2001) ("[An] employee cannot establish that the reason [for termination] was pretextual simply because it is ultimately shown to be incorrect.").

That bears emphasizing. Aside from an old corporate memo, which the majority rightly discredits, Appellants have not identified any evidence of ageist animus on the part of the Wal-Mart decision-makers at the Brooklyn, Ohio store. And there appears to be no disagreement that while the plants at issue had little if any value, Wal-Mart's ethics rules served important purposes—to justify the integrity of their product pricing and to emphasize their employees' duty to protect Wal-Mart's inventory, particularly the perishable sort. One can see why Wal-Mart could face very tangible business risks if it was not disciplined in enforcing these principles, even if in a set of circumstances such as this, where inventory of little monetary value is involved. Indeed, there is no dispute between the parties that Wal-Mart extensively trained its employees, including Appellants, on its ethics policy and ensured its employees, again including Appellants, passed a computer-based lesson ("CBL") demonstrating proficiency in that policy.

See Dep. of Christopher Moffat, ECF No. 19-1, Page ID 329-331; Dep. of Clarissa Thompson, ECF No. 19-2, Page ID 415-16; Dep. of Patricia Schmidt, ECF No. 19-3, Page ID 502-07. And there is also no dispute that the CBL gave examples of gifts and gratuities to include "discontinued or no longer used samples and merchandise" and encouraged employees to obtain advice if they were unsure of the policy. Moffat Corp. Ethics CBL, ECF No. 19-4, Page ID 584.

Discovery was closed. Appellants produced no additional evidence of ageism. Despite this, the suggestion is that Wal-Mart's decision-makers at its Brooklyn store were sufficiently inept that one must, taking the facts in the light most favorable to the Appellants, conclude that age might have been a motivation for Appellants' termination. I do not believe *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), cited for this proposition, to be controlling in this case. The facts of *Reeves* are inapposite to the facts Appellants have actually developed in this case. This dispute is more appropriately governed by Sixth Circuit caselaw counseling deference to business judgment. The mere fact Theobald did not gather more evidence, instead relying on evidence gathered by a direct subordinate tasked with investigating Appellants' misconduct, does not meet this Court's standard for proof of pretext.

### 1.

The majority concludes that the decision-making process utilized by Theobald was so deficient that no proof or indicia of age discrimination need be proved by Appellants to survive summary judgment. According to the majority, such a deficient process is itself an analog for intentional ageist animus. I do not believe that existing legal authority supports that proposition.

*Reeves*, in my view, requires affirmance. In *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 504 (2007), this Court held that under *Reeves* a plaintiff must make a "substantial showing that his employer's stated reason for terminating him was false." But

because the plaintiff "fail[ed] to adduce any evidence that he was fired for a reason other than poor job performance" his case could not survive summary judgment under *Reeves*. *Id*. Thus, *Abdulnour* highlights an important point. *Reeves* demands that a plaintiff demonstrate the *falsity* of an employer's justification for termination, not its mere deficiency. The facts of *Reeves* alone are sufficient to demonstrate this point. Surviving summary judgment requires that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is *false*, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148 (emphasis added).

In *Reeves*, the employee-petitioner was terminated due to "numerous timekeeping errors and misrepresentations on the part of [the petitioner and two of his coworkers.]" *Id*. 138 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 197 F.3d 688, 690 (5th Cir. 1999)) (internal quotation marks omitted). After being terminated, the petitioner, Reeves, filed suit against his employer under the ADEA "contending that he had been fired because of his age[.]" *Id*. The case proceeded to trial and the jury returned a verdict for Reeves. The defendant filed a motion for judgment as a matter of law that was denied by the district court. The Fifth Circuit reversed.

In reversing, the Fifth Circuit held that "[Reeves] had not introduced sufficient evidence to sustain the jury's finding of unlawful discrimination." *Id*. at 139. The Fifth Circuit noted that Reeves likely produced sufficient evidence to demonstrate pretext but he did not prove the ultimate issue: whether the employer's decision to terminate was motivated by Reeves' age. The Fifth Circuit reached this conclusion because the evidence of ageism on the part of one of Reeves' supervisors—certain ageist comments—was unrelated to Reeve's actual termination. Reeves did not introduce any evidence that the two other supervisors that participated in his termination "were motivated by age[.]" *Id*. "On this basis, the court concluded that petitioner had

not introduced sufficient evidence for a rational jury to conclude that he had been discharged because of his age." *Id.* at 140.

The Supreme Court disagreed but did so because Reeves "made a substantial showing that respondent's explanation was false." *Id.* at 144. The evidence supporting the nondiscriminatory explanation for Reeves' discharge "consisted primarily of testimony by Chesnut and Sanderson and documentation of petitioner's alleged 'shoddy record keeping.'" *Id.* at 143 (quoting *Reeves*, 197 F.3d at 692). This evidence purportedly revealed that the area Reeves oversaw was very lax, due in part to Reeves "not correctly recording the absences and hours of employees." *Id.* at 144. The employer-respondent also produced evidence of employees that Reeves supervised who committed attendance violations but who went undisciplined by Reeves. Ultimately, the employer claimed that Reeves was terminated for falsifying company pay records since employees under Reeves' charge were being paid for hours Reeves failed to indicate they did not actually work.

While this explanation established a nondiscriminatory basis on which Reeves was terminated, Reeves responded by disproving the respondent's claims of deficient performance. The Supreme Court detailed at length the ways in which Reeves produced evidence that disproved his former employer's nondiscriminatory reason for termination. *Id.* at 144-45. Many of Reeves' explanations resulted in concessions by his former supervisor that Reeves' allegedly terminable offenses were actually not offenses at all. Many resulted from assumptions made by management when confronted with less-than-clear records. For example, Reeves' superior admitted that the timeclock at the plant often malfunctioned. When it did, a supervisor such as Reeves would write in the day's start time—7 a.m.—as the employee's arrival time if the employee was at his station on time. This undercut the employer's assertion that an employee

who punched in at 7 a.m. could not be at his station by 7 a.m. Thus, Reeves rebutted, with admissible evidence, each factual assertion that his employer advanced to justify his termination.

Because of the evidence that petitioner-plaintiff Reeves' produced that his employer's reasons for terminating him were false, the Supreme Court did away with the requirement that a plaintiff show some additional indicia of age discrimination to establish a prima facie case and survive summary judgment. The Supreme Court explained, however, that an employer's nondiscriminatory explanation for a plaintiff's termination must be false if it is to stand in for indicia of discrimination. That has also been the law of our Circuit. *See, e.g., Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483 (6th Cir. 2012) (holding that appellant could not establish that the process of hiring her eventual replacement before terminating her proves that the employer's reason for termination was false and that, as a result, she needed to prove discriminatory animus); *cf. Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 335-36 (6th Cir. 2012) (reversing summary judgment in ADEA case where there was no evidence of ageism but there was proof of direct hostility toward the plaintiff by the ultimate decision-maker that was not related to stated reason for termination).

One could be critical of Theobald for a number of reasons. While his methods, and his decision that the case required termination rather than coaching, may leave something to be desired, his explanation demonstrated his ability to distinguish the relevant difference between Wal-Mart's integrity policy and its policy prohibiting employee theft. When asked whether employees would violate the gifts policy by retrieving dead plants from the trash without the vendor's knowledge, he answered no. Dep. of Joseph Theobald, ECF No. 20-4, Page ID 1041-42. When posed a question concerning Appellants' behavior in this case and whether that violated the gifts policy, he answered yes. *Id.* at 1038-39. When asked why this situation resulted

in such a harsh penalty he directed his questioner's attention to Wal-Mart's decision to make integrity issues an immediately terminable offense. *Id.* at 1041. His answer comports with what he listed as the reason for Appellants' termination when he initially made the decision: "integrity issue."

While Theobald acknowledged that he did not review the documentary evidence available to him about Appellants' interviews with Jenkins, he did rely upon Appellants' admissions to Jenkins during their investigatory interviews. Appellants admitted during their interviews that they asked a vendor if they could take home items which they were responsible for overseeing, which is all the information that Wal-Mart's policy and the law required Theobald to rely upon. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) ("[W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned."). Far from leaving numerous stones unturned, Theobald relied on the facts gathered by Jenkins, a permissible means of decision-making. *See Crabtree v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 14-3868, 2015 WL 1948267, at *4 (6th Cir. May 1, 2015) (holding that a decision-maker's reliance on reports of misbehavior from subordinates can constitute reasonable reliance on particularized facts).

Finally, I do not believe a jury could, without more, conclude that Theobald's decision was actually pretext for age discrimination. As addressed above, proof of the falsity of an employer's proffered reason for termination has always been distinguished from a harsh or erroneous application of corporate policy. The law should continue to treat the two differently.

## 2.

Assuming for sake of argument that Appellants could conceivably rebut Wal-Mart's legitimate non-discriminatory reason for termination, that does not end my concern. "Under this

circuit's modified honest-belief doctrine, for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its *reasonable* reliance on the particularized facts that were before it at the time the decision was made." *Russell v. Univ. of Toledo*, 537 F.3d 596, 605 (6th Cir. 2008) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir.2006)) (internal quotation marks omitted) (emphasis in original). The majority notes that "Theobald's own testimony shows that he did not ascertain or know all the relevant facts[] and that he did not think it important to know such facts before terminating Plaintiffs' employment." For that reason, the majority concludes, "[t]he honest-belief defense . . . does not apply."

That, in my view, misapplies the honest belief rule. The honest belief rule asks if the reliance by the employer on the "particularized facts that were before it at the time the decision was made" was reasonable. *Russell*, 537 F.3d at 605. Put another way, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 155 F.3d at 807. No evidence adduced by Appellants, or identified by the majority would make Theobald's reliance on the facts before him unreasonable. True, he could have gathered more information or undertaken a more deliberate procedure. But Appellants admitted, and all parties agree, that they took the plants after asking the vendor if they could. *See Crabtree*, 2015 WL 1948267, at *4 (holding that it is reasonable for a decision maker to not directly ascertain facts but instead rely on facts communicated by subordinate investigators). Theobald's reliance on the Appellants' admissions of culpability was reasonable.

## C.

One last point is important. Allowing an ADEA case to proceed to trial with no material evidence of age discrimination is particularly concerning because the ADEA does not authorize a

mixed-motive jury question. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). This means that a reasonable juror must conclude not only that Wal-Mart possessed some ageist animus in arriving at its termination decision, but that the decision to terminate was predicated *only* on Appellants' age. How any reasonable juror could do so in a case where the plaintiffs have admitted to committing the offending conduct and the plaintiffs have marshaled virtually no evidence that the plaintiffs' ages were Wal-Mart's guiding criteria is puzzling.

## III.

Respectfully, I would affirm the district court's conclusion that Appellants "have not supplied evidence by which the fact finder might reasonably infer the existence of a discriminatory motive." August 1, 2014 Opinion & Order 17, ECF No. 36, Page ID 2091.